UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT
CASE NO. 15-6103

CHIROPRACTORS UNITED FOR RESEARCH
AND EDUCATION, LLC, et al                    APPELLANTS

v.

JACK CONWAY, et al.                            APPELLEES

---

Appeal from the United States District Court
Western District of Kentucky at Louisville
Civil Action No. 3:15-CV-556-GSN

---

## CORRECTED BRIEF OF APPELLANTS

---

Respectfully submitted,


*/s/ John D. Cox*
John D. Cox
Petersen S. Thomas
**LYNCH, COX, GILMAN & GOODMAN, PSC**
500 West Jefferson Street, Ste. 2100
Louisville, Kentucky 40202
Phone: (502) 589-4215
Facsimile: (502) 589-4994
jcox@lynchcox.com
pthomas@lynchcox.com
*Counsel for Appellants, Chiropractors United for Research and Education, LLC, Commerce Chiropractic and Rehab, PSC, Louisville Sports and Injury Chiropractic & Rehab Center, Robert Kleinfeld, David Seastedt, E-Town Injury Center, Inc., David Romano*

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT
CASE NO. 15-6103

CHIROPRACTORS UNITED FOR RESEARCH
AND EDUCATION, LLC, et al                                    APPELLANTS

v.

JACK CONWAY, et al.                                          APPELLEES

## DISCLOSURE OF CORPORATE AFFILIATIONS AND FINANCIAL INTERESTS

Pursuant to 6th Cir. R. 26.1, Appellants make the following disclosure:

1. Is said party a subsidiary or affiliate of a publicly owned corporation? **No**.

   If yes, list below the identity of the parent corporation or affiliate and the relationship between it and the named party.  **N/A**

2. Is there a publicly owned corporation, not a party to the appeal, that has a financial interest in the outcome?  **No**.

   If yes, list the identity of such corporation and the nature of the financial interest.  **N/A**


/s/ John D. Cox                                      November 19, 2015
 John D. Cox                                         Date

## <u>STATEMENT IN SUPPORT OF ORAL ARGUMENT</u>

Due to the time sensitive and pressing nature of this matter, Plaintiff/Appellants respectfully decline the opportunity to present oral argument on this issue.

# TABLE OF CONTENTS

Page

CORPORATE DISCLOSURE STATEMENT ......................................................i

STATEMENT IN SUPPORT OF ORAL ARGUMENT ........................................ ii

TABLE OF AUTHORITIES .............................................................. vi-ix

I. JURISDICTIONAL STATEMENT ....................................................1

    A. District Court Jurisdiction...........................................................1

    B. Court of Appeals Jurisdiction.....................................................1

    C. Statement of Filing Dates...........................................................1

    D. Information Establishing this Court's Jurisdiction Pursuant to F.R.A.P. 28(A)(4)(D) ...............................................................1

II. STATEMENT OF ISSUES PRESENTED ...........................................3

III. STATEMENT OF THE CASE............................................................4

    A. Procedural History....................................................................4

    B. The Parties ..............................................................................4

IV. STATEMENT OF FACTS .................................................................7

    A. PIP Benefits ............................................................................7

    B. The Prior Solicitation Statute ...................................................8

    C. The New Solicitation Statute.....................................................11

    D. The Effect of the New Solicitation Statute..................................15

    E. The Justifications for the New Solicitation Statute......................18

    F. The Solicitation Regulation......................................................19

G.  The Injury to CURE and the Providers ....................................................20

H.  The District Court's Ruling ....................................................................21

V.   SUMMARY OF ARGUMENT ........................................................................22

VI.  ARGUMENT ....................................................................................................24

A. The Standard of Review for this Appeal is *De Novo* ...............................24

B. The District Court Erred When it Failed to Enjoin the Enforcement of the New Solicitation Statute ..........................................................................24

    1.  The District Court's Order should be reversed because it applied the wrong level of scrutiny to determine whether there was a substantial likelihood of success on the merits of Plaintiffs' constitutional challenge of KRS 367.4081-4083 ...........................28

        a.  A Content and Speaker Based Restriction on Speech Requires Strict Scrutiny Review.  .......................................28

        b.  The New Solicitation Statute Cannot Be Upheld Under Strict Scrutiny…………………………………..………38

    2.  The New Solicitation Cannot be Upheld Even Under the Intermediate Level of Scrutiny set forth in <u>Central Hudson</u>……..40

        a.  The Central Hudson test ......................................................41

        b.  Enforcement of the New Solicitation Statute should be enjoined and declared unconstitutional because the "evidence" submitted in support of the statute by the Attorney General is irrelevant and incorrect and does not satisfy strict scrutiny. ..........................................................47

            i.  *The misleading "evidence" offered by the Attorney General*…………………………………………47

iv

ii. *The improper emphasis on irrelevant fraudulent tactics by some medical provider*......................................*51*

c. The District Court erred by failing to recognize the full scope of the ban by failing to address its effect on CURE...........................52

VII. CONCLUSION ...............................................................................53

CERTIFICATE OF SERVICE…...……………………………………54

CERTIFICATE OF COMPLIANCE.…………………………….…..55

# <u>TABLE OF AUTHORITIES</u>

<u>Case</u>                                                                     <u>Page</u>

*1-800-411-Pain Referral Service, LLC v. Otto*,
744 F.3d 1045 (8th Cir. 2014) ............................................................31

*ACLU v. Pulaski Cnty.*,
96 F.Supp. 2d 691 (E.D. Ky. 2000)..................................................27

*Bays v. City of Fairborn*,
668 F.3d 814 (6th Cir. 2012) ............................................................24

*Bd. of Trs. v. Fox*,
492 U.S. 469 (1989).........................................................................39

*Blue Diamond Coal Co. v. Trs. of the UMWA Combined Benefit Fund*,
249 F.3d 519 (6th Cir.2001) ...........................................................28

*Blue Movies, Inc. v. Louisville/Jefferson Cnty. Metro Gov't*,
317 S.W.3d 23 (Ky. 2010)..........................................................36, 37

*Bolger v. Youngs Drug Prods. Corp.*,
463 U.S. 60 (1983)...........................................................39, 41, 45, 51

*Boos v. Barry*,
485 U.S. 321 (1988).........................................................................23

*Capobianco v. Summers*,
377 F.3d 559 (6th Cir. 2004) ............................................................10

*Carey v. Brown*,
447 U.S. 455, 462, 100 S.Ct. 2286, 65 L.Ed.2d 263 (1980) ........................30

*Carey v. Population Servs., Int'l*,
431 U.S. 678 (1977)..........................................................................51

*Central Hudson Gas & Electric Corp. v. Public Service Commission of New York*,
447 U.S. 557 (1980)....................................................................*passim*

*Chabad of S. Ohio & Congregation Lubavitch v. City of Cincinnati*,
363 F.3d 427 (6th Cir. 2004) .................................................................25, 27

*City of Renton v. Playtime Theatres, Inc.*,
475 U.S. 41 (1986).......................................................................................37

*Connection Distrib. Co. v. Reno*,
154 F.3d 281 (6th Cir. 1998) ......................................................................26

*Coomer v. Phelps*,
172 S.W.3d 389 (Ky. 2005)...........................................................39, 43, 45

*Edenfield v. Fane*,
507 U.S. 761, 770 (1993)…………………………………………………..47

*Educational Media Co. at Virginia Tech, Inc. v. Insley*,
731 F.3d 291 (4th Cir. 2013) ......................................................................32

*Elrod v. Burns*,
427 U.S. 347 (1976).....................................................................................26

*Florida Bar v. Went for It, Inc.*,
515 U.S. 618 (1995)...............................................................................10, 47

*Flying J Travel Plaza v. Transp. Cabinet, Dep't of Highways*,
928 S.W.2d 344 (Ky. 1996).........................................................................35

*Foster v. Farm Bureau*,
189 S.W.3d 553 (Ky. 2006).........................................................................16

*G&V Lounge, Inc. v. Michigan Liquor Control Comm'n.*,
23 F.3d 1071 ..........................................................................................26, 27

*In re Ferro Corp. Derivative Litigation*,
511 F.3d 611 (6th Cir. 2008) ......................................................................28

*Jafet Figueroa and A-1 Auto Sports, LLC v. Jack Conway*,
Civil Action No. 12-CI-00198.......................................................................9

*Ky. Heartwood, Inc. v. Worthington*,
20 F. Supp. 2d 1076 (E.D. Ky. 1998)..............................................................25

*Leary v. Daeschner*,
228 F.3d 729 (6th Cir. 2000) ..........................................................................25

*NAACP v. Button*,
371 U.S. 415, 83 S.Ct. 328, 9 L.Ed.2d 405 (1963) ........................................49

*Neurodiagnostics v. Farm Bureau*,
250 S.W.3d 321 (Ky. 2008)..............................................................................16

*Newsome v. Norris*,
888 F.2d 371 (6th Cir. 1989) ..........................................................................26

*Occupy Fort Myers v. City of Fort Myers*,
882 F. Supp.2d 1320 (M.D. Fla. 2011) ...........................................................34

*Ohralik v. Ohio State Bar Ass'n.*,
436 U.S. 447 (1978)..........................................................................................10

*Reed v. Town of Gilbert*,
135 S.Ct. 2218 (2015)..............................................................................*passim*

*Republican Party of Minn v. White*,
536 U.S. 765 (2002)..........................................................................................37

*Silverman v. Summers*,
28 Fed.App'x. 370 (6th Cir. 2001) ..................................................................10

*Sorrell v. IMS Health, Inc.*,
131 S.Ct. 2653 (2011)..............................................................................*passim*

*State Farm Mut. Auto. Ins. Co. v. Conway*,
No. 3:13-CV-00229-CRS, 2014 WL 2618579 (W.D. Ky. June 12, 2014)...10

*Tyson Foods, Inc. v. McReynolds*,
865 F.2d 99 (6th Cir.1989) ..............................................................................25

*United States v. Stevens*,
559 U.S. 460 (2010).......................................................................23

*Widmar v. Vincent*,
454 U.S. 263, 102 S. Ct. 269, 70 L. Ed. 2d 440 (1981) ................................36

*Zablocki v. Redhail*,
434 U.S. 374 (1978).......................................................................37

*Zauderer v. Office of Disciplinary Counsel of Supreme Court of Ohio*,
471 U.S. 626, 644 (1985) .......................................................37, 41

## STATUTES AND RULES

<u>Federal</u>                                                                <u>Page</u>

28 U.S.C. § 1292(a)(1) .............................................................1, 2
F.R.A.P. 28(A)(4)(D)...................................................................1

<u>State</u>                                                                <u>Page</u>

201 KAR 21:015...........................................................................19
KRS 304.39..............................................................................7, 8
KRS 367.4081....................................................................1, 3, 4, 12, 15
KRS 367.4082.......................................................... 1, 3, 4, 12, 13, 17, 18, 35
KRS 367.4083..................................................................1, 3, 12, 14, 16
KRS 367.409.................................................................8, 9, 11, 15
Ky. Acts. Ch. 46, § 5 ....................................................................8

# I.    JURISDICTIONAL STATEMENT

## A.    District Court Jurisdiction

The underlying action concerns the constitutionality of KRS 367.4081-4083, which became effective on June 24, 2015. On June 19, 2015, Plaintiff/Appellants filed an action in the United States District Court for the Western District of Kentucky at Louisville challenging the constitutionality of this statute (Complaint, RE 1) and seeking to enjoin its enforcement by Motion for Preliminary Injunction and Request for Expedited Hearing Dated and Briefing Schedule. (Motion, RE 3).

## B.    Court of Appeals Jurisdiction

The District Court's denial of Plaintiff/Appellants' Motion for Preliminary Injunction (Memorandum Opinion and Order ("**Opinion**"), RE 32) and the timely filing of a Notice of Appeal therefrom, provides this Court with jurisdiction pursuant to 28 U.S.C. § 1292(a)(1).

## C.    Statement of Filing Dates

The District Court denied Plaintiff/Appellants' Motion for Preliminary Injunction on October 1, 2015. The Notice of this Appeal was filed on October 7, 2015.

## D.    Information Establishing this Court's Jurisdiction Pursuant to F.R.A.P. 28(A)(4)(D)

This Appeal is from an Order of the District Court refusing to enjoin enforcement of KRS 367.4081-4083 and no direct review may be had in the

1

Supreme Court.  Therefore, pursuant to 28 U.S.C. § 1292, this Court has exclusive jurisdiction of this Appeal.

## II.    <u>STATEMENT OF ISSUES PRESENTED</u>

1.    Did the District Court err in denying the injunctive relief sought by Plaintiff/Appellants when it evaluated the constitutionality of KRS 367.4081-4083 under "intermediate scrutiny" as set forth in <u>Central Hudson v. Public Service Commissions of New York</u>, 447 U.S. 557 (1980) rather than under "strict scrutiny" as set forth in <u>Sorrell v. IMS Health, Inc.</u>, ___ U.S. ___, 131 S.Ct. 2653 (2011) and <u>Reed v. Town of Gilbert, Ariz.</u>, __ U.S. ___, 135 S.Ct. 2218 (2015)?

2.    Did the District Court err in denying the injunctive relief sought by Plaintiff/Appellants because KRS 367.4081-4083 does not meet even the "intermediate" constitutional standard discussed in <u>Central Hudson</u> and utilized by the District Court?

## III.    STATEMENT OF THE CASE

### A.    Procedural History

Plaintiff/Appellants brought this action challenging the constitutionality of KRS 367.4081-4083 ("**the New Solicitation Statute**"), a statute restricting the speech of medical providers regarding basic motor vehicle reparation benefits directed toward recent accident victims for 30 days. (Complaint, RE 1). Plaintiff/Appellants also moved on June 19, 2015, to enjoin the enforcement of the New Solicitation Statute.  (Motion, RE 3).

On October 1, 2015, the District Court filed a Memorandum and Order denying Plaintiff/Appellants' Motion for Preliminary Injunction. (Opinion, RE 32). Plaintiff/Appellants timely filed this appeal from that ruling on October 7, 2015. (Notice of Appeal, RE 33).

### B.    The Parties

The Plaintiff/Appellant Chiropractors United for Research and Education, LLC ("**CURE**") is a group funded by participating chiropractors or businesses whose mission is to conduct research identifying recent accident victims and to educate them within the first 30 days after an accident as to their rights to motor vehicle reparation benefits, known as "PIP" benefits, for any medical needs resulting from the accident. CURE invites recent accident victims to contact CURE

4

members for further information. CURE has sent and continues to send the following letter to individuals identified by its research:

Dear Recent Accident Victim:

CURE is an association of chiropractors in the Louisville area. We believe that research and education about accident victim rights are important to the well-being of the citizens of Kentucky, and in particular recent accident victims. We believe it is important for you to know your rights as you deal with any injuries or pain you experienced in your accident.

Kentucky has what is commonly referred to as a "no-fault" system for providing health care to accident victims which provides that <u>all</u> accident victims, <u>regardless</u> of <u>fault</u>, with basic reparations benefits or "personal injury protection (PIP)" to pay for certain expenses including medical bills as described in KRS 304.39. For your convenience, we have attached the information page from the Kentucky Department of Insurance describing this statute and the statute itself. Of particular importance is the excerpt from the information page emphasized below:

*Personal Injury Protection (PIP) Coverage*

*Kentucky requires basic PIP coverage on all motor vehicles except motorcycles. Basic PIP is to be paid by the insurer of the vehicle in which the injured person is riding at the time of an accident, or the vehicle which strikes a pedestrian, regardless of who was at fault in the accident. **Basic PIP provides up to $10,000 per person per accident for medical expenses, lost wages and similar "out of pocket" costs due to an injury.** Higher benefits and deductibles are optional.*

Because of PIP, many medical providers, including chiropractors, are able to treat your injuries <u>without you incurring any out of pocket costs or settling any potential claim</u>. Please consult an attorney for legal advice or your local healthcare provider, including any of

5

CURE's member chiropractors on the enclosed list, for diagnosis or treatment.

We wish you a speedy recovery!

CURE
Chiropractors United for Research and Education, LLC

(Declarations of Plaintiff/Appellants, RE 3-8, 3-9, 3-10, Page ID #s 163, 172, 181, ("**the CURE letter**")).  The CURE letter then encloses a list of chiropractors.

Plaintiff/Appellant Commerce Chiropractic is a Kentucky chiropractic practice with offices in Louisville, Kentucky.  (Declaration, RE 3-8, Seastedt Declaration, Page ID #157, ¶ 1).  Plaintiff David Seastedt, D.C. is a chiropractor licensed by the Commonwealth of Kentucky with an office located at 1512 Crums Lane, Suite 101, Louisville, Kentucky 40216.  Id.

Plaintiff/Appellant Louisville Sports and Injury Chiropractic & Rehab Center is a Kentucky chiropractic practice with offices in Louisville, Kentucky. (Declaration, RE 3-9, Kleinfeld Declaration, Page ID #166, ¶ 1).  Plaintiff Robert Kleinfeld, D.C. is a chiropractor licensed by the Commonwealth of Kentucky with an office located at 4227 Poplar Level Road, Louisville, Kentucky 40213.  Id.

Plaintiff/Appellant E-Town Injury Center d/b/a Metro Pain Relief Center-Rechter Chiropractics/ Radiology Group is a Kentucky chiropractic practice with offices in Louisville, Kentucky.  (Declaration, RE 3-10, Romano Declaration, Page ID #175, ¶ 1).  Plaintiff David Romano, D.C. is a chiropractor licensed in Florida

with an office located at 2137 Dixie Highway, Louisville, Kentucky 40210. Id. (Hereafter, Drs. Seastedt, Kleinfeld and Romano as well as their respective practices will be referred to collectively as "**the Providers**".)

A sizeable percentage of each of the Providers' business originates from providing treatment to victims of motor vehicle accidents immediately following their accident. (Declaration, RE 3-8, Page ID #163-64; RE 3-10, Page ID #172-73; RE 3-10, Page ID#181-82). These services are often paid for by PIP coverage. Id. Each of the Providers derives a significant percentage of income from patients who often do not have health insurance and are previously unaware of their entitlement to PIP benefits under KRS 304.39-020 et seq. Id. Indeed, frequently these same patients are contacted during the first 30 days after an accident by insurers seeking a quick settlement in exchange for a release. Id.

Thus, CURE and the Providers all seek to advertise to recent accident victims, and, as such, the Providers seek to provide PIP related health care services.

## IV.    <u>STATEMENT OF FACTS</u>

### A.    **Pip Benefits**

Kentucky affords its citizens Basic Reparation Benefits which is commonly known as "Personal Injury Protection" or "PIP." PIP is essentially $10,000 in insurance benefits available to pedestrians and passengers involved in automobile

accidents for: (a) medical expenses, (b) lost wages, and (c) other similar "out of pocket" costs incurred due to the accident, regardless of fault. *See* Kentucky's Motor Vehicle Reparations Act, KRS 304.39. The Kentucky Department of Insurance describes PIP coverage as follows:

> Personal Injury Protection (PIP) Coverage
>
> Kentucky requires basic PIP coverage on all motor vehicles except motorcycles. Basic PIP is to be paid by the insurer of the vehicle in which the injured person is riding at the time of an accident, or the vehicle which strikes a pedestrian, regardless of who was at fault in the accident. Basic PIP provides up to $10,000 per person per accident for medical expenses, lost wages and similar "out of pocket" costs due to an injury. Higher benefits and deductibles are optional.

(Exhibit to Motion, RE 3-5, Page ID #140).

Since every dollar not paid to, or on behalf of, an accident victim under PIP is a dollar saved by the insurance industry, it is no surprise that Kentucky's insurance industry would like to prevent advertising by medical providers whose treatment would be paid by PIP. The history of the insurance industry's recent efforts to statutorily stymie contact between medical providers and recent accident victims provides the context for this Appeal.

**B.   The Prior Solicitation Statute**

KRS 367.409, ("**the Prior Solicitation Statute**") passed and became effective in June of 2011 but did not survive constitutional challenges. It was repealed by Act of March 23, 2015, Ky. Acts. Ch. 46, § 5, effective June 24, 2015.

8

The Prior Solicitation Statute provided that for the first thirty days following a motor vehicle accident, a person:

> shall not directly solicit or knowingly permit another person to directly solicit an individual, or a relative of an individual, involved in a motor vehicle accident for the provision of any service related to a motor vehicle accident.

KRS 367.409. The Prior Solicitation Statute exempted from this restriction communications: (a) by insurers or their agents, and (b) by fire, police or emergency personnel dispatched to an accident.  It further provided that (i) a person who knowingly violated the restriction on solicitation shall be subject to a one thousand dollar ($1,000) fine; (ii) a person licensed or certified by a regulating authority in Kentucky who violated the statute "may be sanctioned" by the licensing or regulating authority; (iii) any charges owed by or on behalf of an individual involved in a motor vehicle accident for services rendered by or on or behalf of a person who violated the statute "shall be void;" and (iv) any moneys paid by or on behalf of a victim of a motor vehicle accident for services rendered by or on behalf of a person who violated this statute "shall be forfeited and returned to the payor." Id.

On March 20, 2012, the Franklin Circuit Court in Jafet Figueroa and A-1 Auto Sports, LLC v. Jack Conway, Civil Action No. 12-CI-00198, enjoined the enforcement of the Prior Solicitation Statute on the grounds that it violated the free speech protections of both the United States and Kentucky Constitutions.

(Complaint, RE 1, Page ID #6). Thereafter, on or about February 25, 2013 State Farm Mutual Automobile Insurance Company ("**State Farm**") filed an action in the United States District Court for the Western District of Kentucky, against various defendants, including the Commonwealth's Attorney General, Jack Conway, seeking a declaration that the Prior Solicitation Statute was constitutional. (Complaint, RE 1, Page ID #6).  Appellant Metro Pain Relief Center was a party to the action and filed briefs arguing that the Prior Solicitation Statute was unconstitutional.

On June 11, 2014, U.S. District Court Judge Charles R. Simpson issued his opinion in that case, State Farm Mut. Auto. Ins. Co. v. Conway, No. 3:13-CV-00229-CRS, 2014 WL 2618579 (W.D. Ky. June 12, 2014), declaring the Prior Solicitation Statute unconstitutional under the First Amendment and the Equal Protection Clause of the Fourteenth Amendment.  (State Farm Opinion, RE 1-3, Page ID #27, 51).

In declaring that the government interest allegedly supporting the Prior Solicitation Statute was not directly advanced by its passage, Judge Simpson looked to Ohralik v. Ohio State Bar Ass'n., 436 U.S. 447 (1978), Florida Bar v. Went for It, Inc., 515 U.S. 618 (1995), Silverman v. Summers, 28 Fed.Appx. 370 (6th Cir. 2001), and Capobianco v. Summers, 377 F.3d 559 (6th Cir. 2004) for guidance.  Based on his review of these cases, Judge Simpson found that "[g]iven

the under and overinclusiveness of the statute, the Court is unable to conclude that the statute achieves a reasonable fit between its ends and means.  Accordingly, the Court holds that KRS 367.409(1) is unconstitutional."  (State Farm Opinion, RE 1-3, Page ID #49).

In addressing the equal protection flaws of the Prior Solicitation Statute, Judge Simpson rejected State Farm's claim that the Central Hudson analysis led to a conclusion that the Prior Solicitation Statute was not in violation of the Equal Protection Doctrine. Judge Simpson stated, "those 'same reasons' do not adequately justify … the [Prior Solicitation Statute's] blanket exemption of all insurers and their representatives regardless of the type of coverages involved." (State Farm Opinion, RE 1-3, Page ID #58). As with respect to the Prior Solicitation Statute, "even if the statute were not unconstitutional under the First Amendment, the motion for reconsideration [challenging the constitutionality of the Prior Solicitation Statute] would nonetheless be granted on the grounds that [it] violates equal protection."  (State Farm Opinion, RE 3-1, Page ID #134).

### C.    The New Solicitation Statute

Rather than appeal from Judge Simpson's ruling, State Farm and the insurance industry decided to draft new legislation aimed at preventing only medical providers (such as the Providers) from soliciting patients for services that would be covered by PIP while still allowing insurers to contact those same

11

patients to obtain releases of claims.  The result was the passage of HB 153, which

was codified at KRS 367.4081-4083 (collectively the "**New Solicitation Statute**").

The New Solicitation Statute provides as follows:

KRS 367.4081 provides:

As used in KRS 367.4081 to 367.4083:

(1) "Healthcare provider" means an individual licensed by any of
the following:

(a) The Kentucky Board of Medical Licensure, pursuant to KRS
Chapter 311;

(b) The Kentucky Board of Chiropractic Examiners, pursuant to
KRS Chapter 312;

(c) The Kentucky Board of Nursing, pursuant to KRS Chapter
314;

(d) The Kentucky Board of Physical Therapy,   pursuant to KRS
Chapter 327;

(e) The Kentucky Board of Occupational Therapy, pursuant to
KRS Chapter 319A; or

(f) The Kentucky Board for Massage Therapy, pursuant to KRS
309.350 to 309.364;

(2) "Intermediary" means an individual, including but not limited
to a telemarketer, agent, employee, or contractor, who solicits a
person, on behalf of a healthcare provider, for the provision of
reparation benefits, as defined by KRS 304.39-020(2);

(3) "Person" means an individual who was involved in an
automobile accident; and

(4) (a) "Solicit" means the initiation of communication with a

person involved in a motor vehicle accident, including but not limited to any face-to-face contact with the person, in writing, electronically, or by any form of telephonic communication, in anticipation of financial gain or remuneration for the communication itself or for prospective charges for healthcare services.

(b) "Solicit" does not mean:
1. Advertising directed to the general public;

2. Telemarketing, which is;

  a. Taken from a general list of phone numbers;
  b. Not targeted at motor vehicle accident victims; and
  c. Not in violation of the state's prohibition on telephone solicitation under KRS 367.46951 to 367.46999 and 367.990; or

3. Contact between a healthcare provider and an individual with whom the healthcare provider had a preexisting provider-patient relationship.

KRS 367.4082 provides:

(1) During the first thirty (30) days following a motor vehicle accident a healthcare provider or an intermediary, at the request or direction of a healthcare provider, shall not solicit or knowingly permit another individual to solicit a person involved in a motor vehicle accident for the provision of reparation benefits, as defined by KRS 304.39-020(2).

(2) A healthcare provider shall not:

(a) Pay or receive compensation for the referral or solicitation of reparation benefits for a person involved in a motor vehicle accident;

(b) Provide monetary compensation or other consideration to

13

any individual for the purpose of inducing, enticing, or directing the provision of reparation benefits for a person involved in a motor vehicle accident; or

(c) Contact, request, or direct an intermediary to contact, for the purpose of solicitation, a person involved in a motor vehicle accident during the first thirty (30) days following a motor vehicle accident.

(3) A healthcare provider shall be responsible for the content of any contact, made at the direction or request of the healthcare provider, by an intermediary with a person involved in a motor vehicle accident within the first thirty (30) days following the motor vehicle accident involving a person.

(4) Any healthcare provider having knowledge of facts, actual or direct, of a violation of this section by another healthcare provider, an intermediary, or on behalf of the healthcare provider within their scope of practice, shall report the suspected violation to the appropriate board listed in KRS 367.4081(1).

(5) An individual licensed or certified as a healthcare provider, who violates this section, shall be subject to the disciplinary process of the respective licensing or regulatory authority.

KRS 367.4083 provides:

(1) Any charges owed by, or on behalf of, a person involved in a motor vehicle accident for health services rendered by a healthcare provider to the person, in violation of KRS 367.4082, shall be void.

(2) Any charges billed and paid by, or on behalf of, a person of a motor vehicle accident for health services rendered by a healthcare provider to the person, in violation of KRS 367.4082, shall be returned to the reparations obligor or other payor. The healthcare provider who violates KRS 367.4082 shall not pursue collection from the person.

14

KRS 367.409 provides:

> Business solicitation following motor vehicle accident prohibited; exceptions; penalty; additional sanctions by state regulating authority—Repealed

> Effective: June 24, 2015

### D.    The Effect of the New Solicitation Statute

The New Solicitation Statute addresses and specifically prohibits certain speakers – medical providers – from talking to recent accident victims regarding certain subject matter – PIP covered medical treatment – for 30 days following an accident.  *See* KRS 367.4081(1).  As will be shown below, at least five facial features of the New Solicitation Statute impact its constitutionality.

First, given that PIP benefits are paid primarily by insurers and given that the primary entities who receive payment under PIP are medical providers, the statute on its face directly addresses the competition between medical care providers and the insurance industry *for the same PIP dollar*. Insurers and medical providers are obviously in direct competition.  If a PIP paying insurer can obtain a release from the accident victim before the victim realizes they are potentially entitled to up to $10,000 worth of medical treatment without cost to them, the insurer will reap a hefty financial benefit.  In other words, every dollar not paid in PIP benefits is a dollar earned by the insurance industry. On its face, the New

Solicitation Statute therefore gives the insurance industry a 30 day head-start in the race for PIP dollars.

Second, the law effectively grants the insurance industry the power to enforce the statute since any charges for services provided as a result of an offending solicitation "shall be void." *See* KRS 367.4083(1). If charges following any communication in violation of the statute are void, and since insurers can decide whether a given invoice for medical services violates the statute, then insurers can simply refuse to pay charges for medical treatment provided on the basis of a self-serving determination that a particular medical charge arose out of improper contact with an accident victim. The insurance industry can effectively void bills with impunity.[1] On its face, therefore, the New Solicitation Statute allows the insurance industry to both (a) unilaterally determine that the speech of its competitors violates the statute and (b) unilaterally impose sanctions on its competition.

Third, the New Solicitation Statute seeks the same result as the Prior Solicitation Statute in that it also allows insurers and their agents to contact recent

---

[1] If the insurance company is wrong about its determination that a particular charge is void, there are no repercussions because (a) medical providers cannot sue insurance companies for non-payment under PIP in Kentucky (see Neurodiagnostics v. Farm Bureau, 250 S.W.3d 321 (Ky. 2008)) and (b) insurers cannot be sued for bad faith or violations of the Kentucky Unfair Claims Settlement Practices Act in how it handles PIP (see Foster v. Farm Bureau, 189 S.W.3d 553 (Ky. 2006)).

16

victims of automobile accidents to solicit the settlement or release of any claims that could give rise to medical treatment covered by PIP, while at the same time preventing medical providers from presenting competing information and/or offers. Accordingly, those seeking to <u>limit</u> the usage of PIP can speak to recent accident victims, but those who encourage utilizing the full extent of PIP for medical treatment are silenced. On its face, the New Solicitation Statute therefore allows some speakers to solicit potential business with recent accident victims regarding PIP claims while preventing other speakers from doing the same, based solely on the identity of the entity doing the solicitation.

<u>Fourth</u>, the New Solicitation Statute prevents an association of medical providers (CURE) from informing accident victims (via targeted direct mail) of their rights to PIP because that solicitation is a communication *in anticipation* of PIP charges for healthcare services. Section 2(b) of KRS 367.4082 of the New Solicitation Statute provides that a healthcare provider shall not:

> provide monetary compensation or other consideration to any individual for the purpose of inducing, enticing or directing the provision of reparation benefits for a person involved in a motor vehicle accident …"[2]

---

[2] CURE does not do general advertising, but rather uses publicly available information to contact accident victims and advise them of their rights under PIP. Nonetheless, general advertising would also be restricted. While the term "solicit" is defined in the New Solicitation Statute to except out general advertising, section 2(b) of KRS 367.4082 also prohibits payment of money to anyone to induce or entice someone to use their PIP benefits and neither uses the defined term "solicit"

Accordingly, this statute prevents general or targeted advertising by a group such as CURE because CURE is funded by entities who encourage accident victims to make PIP claims. Under the statute, medical providers are prevented from using CURE to educate accident victims. On its face, the New Solicitation Statute thus prevents a collection of medical providers from informing accident victims about their rights simply because they intend to derive a financial benefit therefrom.

And <u>fifth</u>, the New Solicitation Statute (at KRS 367.4082(5)) states that an individual licensed or certified as a healthcare provider that violates the statute "<u>shall be</u> subject to the discipline process of the respective licensing or regulatory authority." (emphasis added). The New Solicitation Statute thus requires the Appellee, the Kentucky Board of Chiropractic Examiners, to discipline chiropractors who provide medical treatment to accident victims arising from a solicitation within 30 days of the accident.

### E.    The Justifications for the New Solicitation Statute

It is intuitively obvious that the New Solicitation Statute is an attempt to achieve the same effect as the unconstitutional Prior Solicitation Statute — to allow insurers to solicit recent accident victims while preventing medical providers from doing so. In the proceedings below, the District Court accepted the Attorney

---

nor independently excepts general advertising. As such, the exception for general advertising in the "solicit" definition does not actually permit general advertising.

General's claim that "the concerns intended to be addressed by the statute were abusive practices by healthcare providers, not insurance companies." (Opinion, RE 32, Page ID #422). As will be shown below, this justification is dispositive of the matter at hand — it implicitly acknowledges that the New Solicitation Statute was intended to exclude from regulation any potential abusive practices of the insurance industry.

Even though the New Solicitation Statute contains no preamble identifying its justifications, the testimony before the legislature made clear that the New Solicitation Statute was drafted to correct the acknowledged constitutional flaws in the Prior Solicitation Statute. A lobbyist on behalf of the insurance industry, Prentice Harvey, testified that the New Solicitation Statute "tries to come back at the problem against through a much narrower restraint that focuses on working through the Boards of Licensure of four or five different medical professions and letting them do the discipline of their own professions." (See Transcript attached to Declaration of Patricia Bauer, RE 3-6, Page ID #145). Accordingly, the only stated grounds for the New Solicitation Statute was to "correct" constitutional flaws in the Prior Solicitation Statute.

### F.    The Solicitation Regulation

In 2006, 201 KAR 21:015 (the "**Regulation**") was adopted by the Kentucky Board of Chiropractic Examiners and Section 6(b) therein provided that "a

chiropractor shall not contact or cause an accident victim to be contacted by the chiropractor's employee, agent, contractor, telemarketer, or anyone acting in concert with the chiropractor." Following the filing of this lawsuit, on the eve of the oral argument on Plaintiff's Motion Injunctive Relief, the Board rescinded the regulation, presumably recognizing its obvious constitutional infirmities.[3]

### G.    The Injury to CURE and the Providers

CURE and the Providers seek to communicate with and advertise to victims of automobile accidents as soon as possible after an accident to advise them of the existence of PIP medical coverage and their right to receive certain medical care at no out-of-pocket cost. Nothing about what CURE and the Providers have said or will say to recent automobile accident victims is misleading or untrue.  Indeed, the Attorney General stated that it "assumes for the purposes of argument that the solicitations Plaintiffs propose to engage in are truthful and not misleading." (Attorney General's Response to Motion, RE 25, Page ID #273, fn. 2)."  And yet, the New Solicitation Statute makes it illegal for medical providers to speak and subjects them to discipline if they do. Because State Farm sought to enforce the Prior Solicitation Statute in a prior action and was ultimately involved in lobbying

---

[3] The District Court found this action rendered Plaintiffs/Appellants' Motion "moot as to the regulation."  (Opinion, RE 32, Page ID #413). While the Board's action renders the claims against the Board moot for purposes of the injunction sought by Plaintiffs/Appellants, the case is not yet final on the merits, and as such, any entitlement to legal fees is still at issue.

for passage of the New Solicitation Statute, the Providers are each operating in fear that State Farm and other insurers will refuse to pay any PIP benefits for many of their patients and will demand return of any payments already made. Furthermore, the Providers are concerned that the Kentucky Board of Chiropractic Examiners is compelled to then discipline them.

### H.    The District Court's Ruling

On October 1, 2015, the District Court filed a Memorandum Opinion and Order ("**Opinion**") denying Plaintiffs/Appellants' Motion for Preliminary Injunction. ("**Motion for Preliminary Injunction**"). (Opinion, RE 32, Page ID #433). In so doing, the District Court purported to distinguish the recent U.S. Supreme Court cases, Sorrell v. IMS Health, Inc., __ U.S. __, 131 S.Ct. 2653 (2011) and Reed v. Town of Gilbert, __ U.S. __, 135 S.Ct. 2218 (2015), and instead looked to Central Hudson Gas & Electric Corp. v. Public Service Commission of New York, 447 U.S. 557 (1980) for guidance. (Opinion, RE 32, passim). In essence, the District Court simply rejected a strict scrutiny constitutional review standard as mandated by Reed and Sorrell and applied an intermediate scrutiny standard to the restrictions on commercial speech set forth in KRS 367.4081-4083.

## V.    <u>SUMMARY OF ARGUMENT</u>

The New Solicitation Statute is a content and speaker-based restriction on commercial speech. As a result, under recent US Supreme Court precedent, the New Solicitation Statute is to be reviewed under strict scrutiny and the statute cannot constitutionally survive that standard of scrutiny.

 "The First Amendment requires heightened scrutiny whenever the government creates 'a regulation of speech because of disagreement with the message it conveys.' … **Commercial speech is no exception.**" <u>Sorrell v. IMS Health Inc.</u>, 131 S. Ct. 2653, 2664 (2011) (internal citation omitted, emphasis added). The U.S. Supreme Court in <u>Reed v. Town of Gilbert, Ariz.</u>, 135 S. Ct. 2218 (2015) discussed <u>Sorrell v. IMS Health</u>, and <u>Reed</u>'s holding can be fairly summarized as follows:

- Government regulation of speech is content based if a law applies to particular speech because of the topic discussed or the idea or message expressed.

- This common sense meaning of the phrase content based requires a court to consider whether a regulation of speech "on its face" draws distinctions based on the message a speaker conveys.

- Facial distinctions defining regulated speech by particular subject matter or defining regulated speech by its function or purpose are distinctions drawn based on the message a speaker conveys, and **are subject to strict scrutiny.**

22

<u>Reed</u>, 135 S.Ct. at 2227.   Thus, it is the law of the land that strict scrutiny is applied where a restriction on commercial speech is <u>content-based</u>.   <u>Id</u>.   In other words, the standard of scrutiny to be applied to restrictions on commercial speech has been clarified such that (1) the intermediate scrutiny analysis set forth in <u>Central Hudson Gas & Elec. Corp. v. Public Service Commission of New York</u>, 447 U.S. 557 (1980) does not apply if the statute is content-based, and (2) heightened scrutiny means strict scrutiny.

Under the correct standard of scrutiny, the New Solicitation Statute can only be upheld if the state proves (a) it has a compelling state interest, and (b) that the statute is narrowly tailored to advance that compelling interest.   <u>Reed</u>, 135 S.Ct. at 2226, *see also* <u>Boos v. Barry</u>, 485 U.S. 321 (1988).   Content-based restrictions are presumptively unconstitutional, and the state has the burden to rebut that presumption.   <u>United States v. Stevens</u>, 559 U.S. 460, 468 (2010).

Here, the State has failed to show that the New Solicitation Statutes is narrowly tailored to advance its asserted compelling interest of preventing abusive solicitation.   Furthermore, since the New Solicitation Statute does not apply to insurers and their agents, the statute is also unconstitutionally underinclusive.

Moreover, even if the New Solicitation Statute were to be reviewed under the "intermediate scrutiny" standard set forth in <u>Central Hudson</u>, the New

Solicitation Statute also fails to meet constitutional muster due to its inclusion of all medical providers and the blind-eye it turns to insurers.

## VI.    ARGUMENT

### A.    The Standard of Review for this Appeal is *de novo*.

"Because the 'determination of whether the movant is likely to succeed on the merits is a question of law and is accordingly reviewed de novo,' […] **the standard of review for a district court decision regarding a preliminary injunction with First Amendment implications is de novo.**" Bays v. City of Fairborn, 668 F.3d 814, 819 (6th Cir. 2012) (citations omitted, emphasis added).

### B.    The District Court Erred When it Failed to Enjoin the Enforcement of the New Solicitation Statute.

Reviewing the Motion for Preliminary Injunction *de novo*, the initial question for this Court is whether CURE and the Providers are entitled to injunctive relief under CR 65. [4] Courts have developed four factors to be considered:

> 1)    whether the plaintiffs have shown a strong or substantial likelihood or probability of success on the merits;

---

[4] The Attorney General and the Board of Chiropractic Examiners did not challenge the standing of CURE and the Providers to file this action. (Attorney General's Response to Motion, RE 25, Page ID# 270). CURE and the Providers had standing to bring this action because, in a verified complaint, they alleged their intention to carry out presumptively protected, truthful, non-misleading commercial speech advertising activities which subjected them to the threat of their bills for services being voided and/or professional discipline by the Defendants. (Complaint, RE 1, Page ID #12, ¶ 34).

2)    whether the plaintiffs have shown irreparable injury;

3)    whether the issuance of a preliminary injunction would cause substantial harm to others; and

4)    whether the public interest would be served by issuing a preliminary injunction.

Ky. Heartwood, Inc. v. Worthington, 20 F. Supp.2d 1076, 1094-95 (E.D. Ky. 1998), *citing* Tyson Foods, Inc. v. McReynolds, 865 F.2d 99, 101 (6th Cir. 1989). These factors are "to be balanced against one another and should not be considered prerequisites to the grant of a preliminary injunction." Leary v. Daeschner, 228 F.3d 729, 736 (6th Cir. 2000).

With respect to the second factor – whether the plaintiffs would suffer irreparable injury – the 6th Circuit has held that "even minimal infringement upon First Amendment values constitutes irreparable injury sufficient to justify injunctive relief." Chabad of S. Ohio & Congregation Lubavitch v. City of Cincinnati, 363 F.3d 427, 436 (6th Cir. 2004) (quoting Newsom v. Norris, 888 F.2d 371, 378 (6th Cir. 1989)). "The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." Elrod v. Burns, 427 U.S. 347, 373 (1976); *see also* G&V Lounge, Inc. v. Michigan Liquor Control Commission, 23 F.3d 1071, 1078 (6th Cir. 1994). Because the New Solicitation Statute allegedly infringes upon CURE and the Providers' free speech

rights, and loss of such rights for even a minimal period of time is irreparable injury, this factor plainly weighs in favor of injunctive relief.

With respect to the third factor (whether issuance of the injunction would cause substantial harm to others) and the fourth factor (whether the public interest would be served by the issuance), the constitutional issues at stake again easily meet the test. "No substantial harm [to others] can be shown in the enjoinment of unconstitutional policy." Chabad of Southern Ohio & Congregation Lubavitch, 363 F.3d at 436. "**[I]t is always in the public interest to prevent the violation of a party's constitutional rights**." G&V Lounge, Inc., 23 F.3d at 1079 (citing Gannett Co., Inc. v. DePasquale, 443 U.S. 368, 383 (1979) (emphasis added)). "[T]he protection of First Amendment rights and **vindication of constitutional violations is always in the public's interest**." ACLU v. Pulaski Cnty., 96 F. Supp.2d 691, 702 (E.D. Ky. 2000) (citing Connection Distrib. Co. v. Reno, 154 F.3d 281, 286 (6th Cir. 1998)); and G&V Lounge, Inc., 23 F.3d at 1079 (emphasis added).

As the District Court recognized, the Court need only address the first factor — in order to resolve this motion: whether CURE and the Providers have a strong likelihood of success on the merits. (Opinion, RE 32, Page ID #413). Whether there is a "substantial likelihood of success," and therefore whether the Motion for Preliminary Injunction should have been granted below, is thus a function of

26

whether the New Solicitation Statute passes constitutional muster. In determining whether there was a substantial likelihood of success on the merits of CURE and the Providers' challenge, the District Court analyzed the constitutionality of the New Solicitation Statute under the intermediate scrutiny standard set forth in Central Hudson Gas & Electric Corp v. Public Service Commission of New York, 447 U.S. 557 (1980).  (Opinion, RE 32, Page ID #414).  The District Court then concluded that "because Plaintiffs have not shown that they are likely to succeed on the merits of the case," the Motion for Preliminary Injunction was denied. (Opinion, RE 32, Page ID #433).

There were at least three fundamental errors with the District Court's approach: 1) the New Solicitation Statute should have been be reviewed under "strict" scrutiny, not "intermediate" scrutiny; 2) the New Solicitation Statute fails to satisfy the strict scrutiny standard; and 3) even under an intermediate scrutiny standard, the New Solicitation Statute fails.  Each of these fatal flaws in the District Court's Opinion will be discussed in turn in the arguments that follow.

27

1. **The District Court's Order should be reversed because it applied the wrong level of scrutiny to determine whether there was a substantial likelihood of success on the merits of CURE and the Providers' constitutional challenge of KRS 367.4081-4083.**

   a. **A Content or Speaker-Based Restriction on Speech Requires Strict Scrutiny Review.**

As a threshold matter, the District Court's Opinion should be reversed and remanded simply because the District Court applied the wrong constitutional standard when determining whether CURE and the Providers are likely to succeed on their constitutional challenge of the New Solicitation Statute.

> A court abuses its discretion when it commits *a clear error of judgment, such as applying the incorrect legal standard*, misapplying the correct legal standard, or relying upon clearly erroneous findings of fact. *See* Blue Diamond Coal Co. v. Trs. of the UMWA Combined Benefit Fund, 249 F.3d 519, 524 (6th Cir. 2001); Schenck v. City of Hudson, 114 F.3d 590, 593 (6th Cir. 1997).

In re Ferro Corp. Derivative Litigation, 511 F.3d 611, 623 (6th Cir. 2008) (emphasis added).  Thus, even if a First Amendment challenge were not subject to *de novo* review, the District Court's failure to apply the correct legal standard is itself an abuse of discretion which should be reversed.

The proper legal standard against which to evaluate the constitutionality of the New Solicitation Statute is strict scrutiny.  "The First Amendment requires heightened scrutiny whenever the government creates a regulation of speech because of disagreement with the message it conveys. … **Commercial speech is**

**no exception**." Sorrell v. IMS Health Inc., 131 S. Ct. 2653, 2664, 180 L. Ed. 2d 544 (2011) (internal quotation marks and citation omitted, emphasis added). The Sorrell case involved a challenge to a Vermont law regulating the sale, disclosure, and marketing of pharmacy records that revealed information about the prescribing practices of individual doctors. Id. at 2660. The regulatory scheme permitted the sale of the information to researchers, but prohibited the disclosure or use of the information by pharmaceutical representatives for marketing. Id. The Supreme Court determined that the statute addressed commercial speech (Id. at 2263), and held that the law was "designed to impose a specific, content-based burden on protected expression." As a result, the Court concluded that "it follows that *heightened judicial scrutiny* is warranted." Id. at 2657 (emphasis added).[5]

Four years later, in June of this year, the U.S. Supreme Court clarified its holding in Sorrell v. IMS Health, and confirmed that by "heightened scrutiny," the Court in fact meant "strict scrutiny." Reed v. Town of Gilbert, Ariz., 135 S. Ct. 2218, 2227 (2015). In Reed, the Supreme Court emphasized that government regulation of any speech (whether commercial or otherwise) that is content or speaker-based is subject to strict constitutional scrutiny:

---

[5] Because the Supreme Court held that the regulations at issue in Sorrell did not meet intermediate level scrutiny under Central Hudson, the Court neither defined nor applied "heightened judicial scrutiny." Accordingly until Reed, supra, a plausible argument could be made that "heightened scrutiny" was not the same as "strict scrutiny."

Government regulation of speech is content based if a law applies to particular speech because of the topic discussed or the idea or message expressed. *E.g., Sorrell v. IMS Health, Inc.,* 564 U.S. ——, —— – ——, 131 S.Ct. 2653, 2663–2664, 180 L.Ed.2d 544 (2011); *Carey v. Brown,* 447 U.S. 455, 462, 100 S.Ct. 2286, 65 L.Ed.2d 263 (1980); *Mosley, supra,* at 95, 92 S.Ct. 2286. This commonsense meaning of the phrase content based requires a court to consider whether a regulation of speech on its face draws distinctions based on the message a speaker conveys. *Sorrell, supra,* at ——, 131 S.Ct. at 2664. Some facial distinctions based on a message are obvious, defining regulated speech by particular subject matter, and others are more subtle, defining regulated speech by its function or purpose. **Both are distinctions drawn based on the message a speaker conveys, <u>and, therefore, are subject to strict scrutiny</u>.**

<u>Id.</u> (emphasis added).

The teaching of <u>Reed</u> is thus clear: a) regulation of commercial speech is content-based if it applies to particular speech because of the topic discussed or the idea or message expressed;  b) a court is required to consider whether a regulation of speech "on its face draws distinctions" based on the message a speaker conveys; and c) facial distinctions defining regulated speech by particular subject matter or defining regulated speech by its function or purpose are distinctions drawn based on the message a speaker conveys, and **are subject to strict scrutiny.**  <u>Id.</u> Accordingly, under <u>Reed</u> and <u>Sorrell</u>, strict scrutiny is applied where a restriction on commercial speech is <u>content-based</u>.  In other words, the standard of scrutiny to be applied to restrictions on commercial speech has now been clarified such that

30

the intermediate scrutiny analysis set forth in <u>Central Hudson</u> *does not apply if the statute at issue is content-based.*

Although the District Court correctly determined that the statute here regulated commercial speech <u>and</u> that the regulation was content-based,[6] the District Court nevertheless applied the intermediate scrutiny test of <u>Central Hudson</u>. (Opinion, RE 32, Page ID #418, 419). This was an incorrect application of the standard under both <u>Sorrell</u> and <u>Reed</u>.

After <u>Sorrell</u> but prior to <u>Reed</u>, courts would at times default to the intermediate scrutiny standard set forth in <u>Central Hudson</u>, essentially concluding that since intermediate scrutiny must be lower than heightened scrutiny, the failure of a regulation to meet the <u>Central Hudson</u> standard would necessarily make it unconstitutional under "heightened" scrutiny. *See, e. g.*: <u>1-800-411-Pain Referral Service, LLC v. Otto</u>, 744 F.3d 1045, 1055 (8th Cir. 2014), where the 8th Circuit

---

[6] The District Court's Opinion held as follows:

> Plaintiffs argue that, because it is a content-based restriction on commercial speech, the New Solicitation Statute is subject to heightened scrutiny. . . . The Court found in *State Farm* that the Prior Solicitation Statute regulated commercial speech, and was thus subject to *Central Hudson's* intermediate scrutiny standard. *State Farm*, No. 3:13-cv-00229-CRS, 2014 WL 2618579, at 3-4. This Court is persuaded by the analysis provided in *State Farm*, but nonetheless revisits Plaintiffs' argument regarding the level of scrutiny applicable to the New Solicitation Statute.

(Opinion, RE 32, Page ID #414).

summarized the status of the test, post-Sorrell, of content based regulations of commercial speech as follows:

> If a commercial speech restriction is content- or speaker-based, then it is subject to "heightened scrutiny." *Sorrell,* 131 S.Ct. at 2664. *Sorrell,* however, did not define what "heightened scrutiny" means. Instead, after concluding that the restrictions in the case were both content- and speaker-based, the Court proceeded to analyze them under the *Central Hudson* factors, noting the outcome would have been "the same whether a special commercial speech inquiry or a stricter form of judicial scrutiny is applied." *Sorrell,* 131 S.Ct. at 2667.

Id. *See also* Educational Media Co. at Virginia Tech, Inc. v. Insley, 731 F.3d 291, 297-98 (4th Cir. 2013) ("we need not determine whether strict scrutiny is applicable here, given that . . . we too hold that the challenged regulation fails under intermediate scrutiny[.]").    Since those decisions, however, Reed has clarified that heightened scrutiny is the same as strict scrutiny.  Reed at 2227.  Now that Reed has eliminated the confusion, it is apparent that the District Court applied the incorrect standard here.

The District Court's efforts to distinguish Reed and Sorrell in order to avoid applying strict scrutiny to the New Solicitation Statute are without merit.  The District Court tried to distinguish Sorrell by asserting that because the United States Supreme Court did not actually go on to apply "heightened scrutiny," the "heightened scrutiny" standard must be the same as Central Hudson's intermediate scrutiny.  Obviously, as indicated above, the District Court misread the primary

holding of Sorrell.  The Sorrell decision simply failed to define the "heightened scrutiny" test because given that the statute at issue could not survive the lower Central Hudson standard, it was unnecessary to define and apply the heightened scrutiny test.[7]

The District Court further held that "the New Solicitation Statute, by contrast [to the Vermont statute at issue in Sorrell] both does not deny any group of people information and does not contain a complete denial of any kind."  (Opinion, RE 32, Page ID #416).  The District Court apparently assumed that because the Vermont law at issue in Sorrell prevented a pharmaceutical company from *getting* the relevant information, that Sorrell is a case about obtaining information, and not a case about regulating "speech." As noted above, the actual text of Sorrell specifically rejects this attempted distinction as well, since Sorrell literally held that the Vermont statute at issue in Sorrell was "**designed to impose a specific, content-based burden on protected expression**."  Sorrell at 2664 (emphasis added).  The undersigned submits that it is improper and illogical to treat Sorrell as

---

[7] The distinction was specifically addressed in oral argument:
> MR. COX … Now, to his point that they analyze *Central Hudson*, if you look through the case, [Sorrell] what they said was, "You can't even meet *Central Hudson* so the law's unconstitutional."
> The issue –and we raised it in our opening brief in this motion for preliminary injunction – was what did heightened scrutiny mean? *Reed* clarifies that.

(Transcript of Preliminary Injunction, September 1, 2015, 13:12-17, RE 36, Page ID #456).

somehow limited to applying to attempts to acquire information rather than setting forth the standard of constitutional review for content-based commercial speech in light of this language.[8]

The District Court also attempts to distinguish the Vermont statute in <u>Sorrell</u> from the <u>New Solicitation Statute</u> because the latter "both does not deny any group of people information and does not contain a complete denial of any kind." (Opinion, RE 32, Page ID #416). This too misses the point. The New Solicitation Statute plainly denies accident victims the information from medical providers, for the first 30 days after an accident, regarding the availability of PIP to pay for medical treatment. Whether this is a "complete" denial of information is irrelevant for purposes of this analysis. The threshold issue is whether on its face this is a content or speaker-based restriction on speech.

---

[8] The District Court also reasoned that although <u>Occupy Fort Myers v. City of Fort Myers</u>, 882 F. Supp.2d 1320 (M.D. Fla. 2011) (holding that content-based restrictions are found where the statute's prohibition is directed only at works with a specific content, are presumptively invalid and the government has the burden to rebut the presumption) "correctly cites the 'law with respect to content-based restrictions on commercial speech'" (Opinion, RE 32, Page ID #414), it "bear[s] no relation to the substance of the New Solicitation Statute, and thus is inapplicable except as noted." (Opinion, RE 32, Page ID #414-415). Since the District Court in fact rejected the idea that the New Solicitation Statute's content-based restriction on commercial speech was presumptively invalid, the "except as noted" language of the opinion is utterly meaningless and is tantamount to acknowledging that the case was directly on point and controlling, but would nevertheless be ignored by the District Court.

Because the New Solicitation Statute only applies to the speech of medical providers or those acting on their behalf and then only if the communication is for the provision of PIP as defined by KRS 304.39-020(2), it is clear that it is a content and speaker-based restriction on commercial speech.[9] Plainly, this statute prevents accident victims from receiving information regarding PIP from medical providers. Since the New Solicitation Statute on its face draws distinctions based on the content of the message the speaker conveys – the prohibited pro-PIP benefits speech of medical providers versus the unrestricted anti-PIP benefits speech of insurers – the statute is subject to strict scrutiny under Reed and Sorrell. "In the ordinary case it is all but dispositive to conclude that a law is content-based and in practice, viewpoint-discriminatory." Sorrell at 2667.

Importantly, Reed and Sorrell's teaching that strict scrutiny applies to content-based restrictions on commercial speech is entirely consistent with the approach of the Kentucky Supreme Court's decision in Flying J Travel Plaza v.

---

[9] Specifically, the New Solicitation Statute in KRS 367.4082(1) states that:

> During the first thirty (30) days following a motor vehicle accident a healthcare provider or an intermediary, at the request or direction of a healthcare provider, shall not solicit or knowingly permit another individual to solicit a person involved in a motor vehicle accident for the provision of reparation benefits, as defined by KRS 304.39-020(2).

Transp. Cabinet, Dep't of Highways, 928 S.W.2d 344 (Ky. 1996).  In addressing

content-based statutes governing billboards, the Court there stated:

> Any time free speech and free press are suppressed, the reasons
> for such suppression must be subjected to close scrutiny.  The
> burden is on the government to show the existence of such an
> interest.  … The courts are charged with reviewing state
> regulations to determine if a regulation is necessary to serve a
> compelling state interest and if it has been narrowly written to
> protect against the evil that the government can control.
> *Widmar v. Vincent*, 454 U.S. 263, 102 S. Ct. 269, 70 L. Ed. 2d
> 440 (1981) provides, '**Where a regulation extends so far as to
> completely outlaw speech because of the subject matter of
> its content, there is a strong presumption of its
> unconstitutionality**.'

Id. at 348 (some citations omitted, emphasis added).  Thereafter, the Kentucky

Supreme Court in Blue Movies, Inc. v. Louisville/Jefferson Cnty. Metro Gov't,

317 S.W.3d 23, 29 (Ky. 2010) held "[r]egulations enacted for the purpose of

restraining speech on the basis of its content presumptively violate the First

Amendment.  … If the regulations are content-based, they are subject to strict

scrutiny."

By limiting the commercial speech of medical providers while at the same

time permitting the competing commercial speech of the insurance industry *on the

exact same topic and for purposes of acquiring the exact same dollar*, the New

Solicitation Statute is undeniably based on the content of the speech and the

identity of the speaker. The District Court's claim that "a state may choose to

regulate one industry but not others" (Opinion, RE 32, Page ID #529, citing

Sorrell) misses the mark. It <u>is</u> the same industry for all practical purposes, and even if it were not, the restriction on the content of commercial speech does not simply disappear because "Kentucky views the risk of fraud to be greater among healthcare providers than other groups." <u>Id.</u> Furthermore, the <u>Reed</u> decision specifically held that a content based regulation is unconstitutionally underinclusive "when it leaves appreciable damage to that [compelling interest] unprohibited." <u>Reed</u>, at 2232 quoting in part <u>Republican Party of Minn v. White</u>, 536 U.S. 765, 780 (2002).[10] There can be no doubt that the New Solicitation Statute is a restriction on commercial speech based on its content and thus, presumptively invalid. The whole point of the New Solicitation Statute is to give the insurance industry a 30 day head start in their competition for those PIP dollars. The free speech concern caused by content-based regulation does not magically vanish simply because the New Solicitation Statute only blocks medical providers.

In sum, because the ban on speech in the New Solicitation Statute creates a content-based restriction, it "presumptively violate[s] the First Amendment." <u>Blue Movies</u>, 317 S.W.3d at 29 (citing <u>City of Renton v. Playtime Theatres, Inc.</u>, 475 U.S. 41, 46-47 (1986). And since the State cannot overcome the New Solicitation

---

[10] *See also* <u>Zauderer v. Office of Disciplinary Counsel of the Supreme Court of Ohio</u>, 471 U.S. 626 (1985) (emphasis added), holding that (governments are entitled to attack problems piecemeal, <u>save where their policies implicate rights so fundamental that strict scrutiny must be applied</u>.) at 651, n. 14 (emphasis added) *citing* <u>Zablocki v. Redhail</u>, 434 U.S. 374 (1978).

Statute's presumptive invalidity, as detailed further below, its enforcement should have been enjoined by the District Court.

**b.    The New Solicitation Statute Cannot be Upheld Under Strict Scrutiny.**

Under the correct standard, the New Solicitation Statute is "presumptively unconstitutional" and can only be upheld if the state shows (a) a compelling state interest, and (b) that the statute is narrowly tailored to serve that compelling interest.  Reed, 135 S.Ct. at 2226.

Because the District Court improperly found that the New Solicitation Statute was subject to intermediate scrutiny under Central Hudson, it did not address (a) whether the state had asserted a compelling state interest and (b) whether the New Solicitation Statute is narrowly tailored to serve that compelling interest.  However, in its briefing in the District Court, the asserted compelling state interests were "the interests of protecting the public from personal injury protection ("PIP") fraud and protecting the privacy interests of accident victims." (Attorney General's Response to Motion, RE 25, Page ID# 273).  The assertion that the statute was narrowly tailored to serve these compelling interests was handled in conclusory fashion by the assertion that H.B. 153 is "narrowly tailored regulate only medical professionals, and uses the least restrictive means available to prevent solicitation of accident victims in limiting the speech of only medical professions, and only for thirty days after an accident." (Attorney General's

38

Response to Motion, RE 25, Page ID# 280).  No further explanation of other means was asserted. Given that the state bears the burden, *see* Board of Trustees, State Univ. of N.Y. v. Fox, 492 U.S. 469, 480 (1989); Bolger v. Youngs Drug Prod. Corp., 463 U.S. 60, 71 n. 20 (1983), it is difficult to imagine how this overcomes the presumption that the New Solicitation Statute violates the First Amendment.

Nonetheless, a review of the assertion that the New Solicitation Statute is narrowly tailored to achieve those allegedly compelling interests is also appropriate.  Assuming for the sake of argument that the protection of PIP fraud and protection of accident victims' privacy are compelling governmental interests, the New Solicitation Statute is not narrowly tailored to advance these asserted interests because the New Solicitation Statute is both fatally under- and over-inclusive.  As to the underinclusiveness, the Reed decision specifically held that a government regulation is not narrowly tailored "when it leaves appreciable damage to that supposed vital interest unprohibited."  Reed at 2232.  The failure to include others who may engage in abusive solicitations of accident victims in the first 30 days after an accident, such as insurers, *see e.g.* Coomer v. Phelps, 172 S.W.3d 389 (Ky. 2005), cause the statute to fail this step.  Likewise, the New Solicitation Statute also is overinclusive and is not narrowly tailored because it applies to

39

prohibit the communications of CURE and other medical providers, regardless of whether their communications have been or can be shown to be abusive.

Fraudulent solicitation by insurers is no less likely or problematic than fraudulent solicitation by medical providers. Yet the New Solicitation Statute permits <u>all</u> solicitation by insurers within 30 days of an accident and prohibits <u>any</u> solicitation by medical providers. The State cannot claim that banning speech regarding PIP by medical providers is necessary to combat fraud while at the same time allowing unfettered speech by insurers regarding PIP. Similarly, the State has offered no reason to believe that the privacy of recent accident victims could be disturbed by medical providers but could not be disturbed by insurers.[11]

## 2.    <u>The New Solicitation Statute cannot be upheld even under the intermediate level of scrutiny set forth in Central Hudson</u>.

Even if this Court were to ignore <u>Sorrell</u> and <u>Reed</u>, and determine that the speech prohibited by the New Solicitation Statute was purely commercial speech <u>and</u> <u>not</u> <u>content</u>-<u>based</u> and were to analyze the law under <u>Central Hudson's</u> intermediate scrutiny, the statute is *still unconstitutional*.

---

[11] *See* <u>Reed</u> at 2231-32, for an analogous discussion regarding signage.

Central Hudson sets forth "a four-part analysis for assessing the validity of restrictions on commercial speech." Bolger v. Youngs Drug Prods. Corp., 463 U.S. 60, 68 (1983) (internal quotation marks omitted).  The four parts are:

1.  Whether the speech is constitutionally protected, which requires at a minimum that it concern lawful activity and not be misleading;
2.  Whether the governmental interest is substantial;
3.  Whether the regulation directly advances asserted government interest; and
4.  Whether it is no more extensive than necessary to serve that interest.

Id. at 68-69.  As the party seeking to uphold the statute, the State bears the burden of establishing that the statute satisfies these requirements.  *See*, Board of Trustees, State Univ. of N.Y. v. Fox, 492 U.S. 469, 476 (1989) (citing Zauderer v. Office of Disciplinary Counsel of Supreme Court of Ohio, 471 U.S. 626, 644 (1985)).  As will be demonstrated below, the District Court improperly concluded that Defendants had met their burden under Central Hudson.

### a.    Applying the Central Hudson test

Since the speech that Plaintiffs intend to communicate to recent automobile victims is both true and lawful, the first part of the Central Hudson test (whether the speech concerns lawful non-misleading speech) is easily met.

With respect to the second factor — whether there is a substantial government interest — the State asserted the New Solicitation Statute was intended to protect the public from PIP fraud and to protect the privacy of accident victims.

41

(Attorney General's Response to Motion, RE 25, Page ID #273). While CURE and the Providers assert it is apparent from the history of efforts to enact both the Prior and New Solicitation Statutes that the actual purpose of the law is to benefit the insurance industry at the expense of its competition, CURE and the Providers concede that Judge Simpson in analyzing this factor under the Prior Solicitation Statute found that the privacy interest was the "raison d'etre" of that statute.[12] Accordingly, while CURE and the Providers dispute this asserted "substantial" government interest, for purposes of this argument, the brief will address the remaining portions of the Central Hudson test.

As to the third and fourth prongs of the Central Hudson test — whether the statute directly advances the asserted interest and whether it is no more extensive than necessary to serve that interest — the New Solicitation Statute fails entirely. While the Prior Solicitation Statute banned all commercial solicitations to accident victims by everyone for any purpose and carved out an exception for insurers, the New Solicitation Statute swings to the opposite extreme by banning only the

---

[12] CURE and the Providers concede that Judge Simpson's Opinion applied only Central Hudson. It is important to note, however, that the Prior Solicitation Statute and the New Solicitation Statute contain significant differences which lead to the conclusion that the New Solicitation Statute is clearly content based while the former arguably was not. Furthermore, Judge Simpson's Opinion was issued prior to the clarification in Reed that strict scrutiny applied to all content-based restrictions on speech. Nonetheless, because he found the Prior Solicitation Statute failed under intermediate scrutiny, it was unnecessary to analyze it under strict scrutiny.

speech of healthcare providers and their intermediaries and then *only if* the speech solicits the provision of basic reparations benefits. But this switch does not in any way fix the constitutional problem because, from the perspective of a citizen's privacy interest, this regulation of all medical providers regardless of whether they have been shown to abuse PIP or regardless of whether a targeted direct mail solicitation is abusive, does not directly advance the asserted privacy interest. Rather, it directly advances a different interest – to keep injured accident victims who are unaware of their rights to PIP in the dark for the first 30 days after an accident. Indeed if the interest is to protect an accident victim's privacy, it would make little sense to not also prevent insurance companies from intruding upon their privacy to obtain releases of claims. *See e.g.* Coomer v. Phelps, 172 S.W.3d 389 (Ky. 2005) (providing an example of an insurer's intrusive solicitations). In fact, in addressing the failure of insurance companies to be included in the Prior Solicitation Statute, Judge Simpson held that under Central Hudson the statute was unconstitutionally underinclusive because it failed to include the insurance companies who had also been shown to be just as likely to engage in abusive PIP tactics. (State Farm Opinion, RE 1-3, Page ID# 48).

If curbing "abuse of the PIP system" is the rationale for the New Solicitation Statute, there is no reason to believe that medical providers can abuse the PIP system, but insurers cannot. The District Court's holding that "It is clear from the

legislative record that the concerns intended to be addressed by the statute were abusive practices by healthcare providers, not insurance companies" (Opinion, RE 32, Page ID #422) effectively concedes that there is no substance to the distinction. If Kentucky's no fault system provides PIP benefits to its citizens who are victims of motor vehicle accidents where their injuries require less than $10,000 worth of medical treatment, then the *premature* release of legitimate PIP claims is just as abusive as the incurrence of illegitimate medical charges.

Judge Simpson had no difficulty recognizing this problem with the Prior Solicitation Statute:

> [T]he [Prior Solicitation Statute] exempts the motor vehicle accident victim's own insurer despite the fact that it might be *just as likely as an opposing party's insurer to engage in abusive solicitation*.

(State Farm Opinion, RE 1-3, Page ID #48, emphasis added). Accordingly, as to the requirement that the Prior Solicitation Statute be "no more restrictive than necessary" to accomplish the Prior Solicitation Statute's ends, Judge Simpson concluded that "the means employed by the statute are so disproportionally restrictive compared to its legitimate ends that the 'fit' between them cannot possibly be characterized as reasonable." (Opinion, RE 1-3, Page ID # 48).

The same reasoning applies to the New Solicitation Statute. The State has failed to demonstrate that its interest in protecting the privacy and tranquility of motor vehicle accident victims cannot be equally well protected by banning only

the speech of abusive solicitors. The state has also failed to show why the insurance industry should be given free rein to engage in abusive or misleading solicitations. Since the party "seeking to uphold a restriction on commercial speech carries the burden of justifying it," <u>Bolger,</u> 463 U.S. 60, 71 n. 20 (1983), the State here fails to meet its burden of demonstrating that KRS 367.4081-4083's "ends-means fit" is sufficiently tailored to meet the standard set forth in <u>Central Hudson</u>.

It is worth noting that instances of insurers successfully circumventing the purpose of the PIP benefits system are demonstrated in Kentucky case law. A release obtained directly by an insurer soliciting and obtaining a premature release of coverage, was discussed by the Kentucky Supreme Court in <u>Coomer v. Phelps</u>, 172 S.W.3d 389 (Ky. 2005).[13]  In <u>Coomer</u>, the accident victim was a pedestrian struck in the knee by a car driven by a driver insured by Progressive.  <u>Id.</u> at 390. The accident victim was treated the day of the accident in the emergency room and diagnosed with a bruised knee.  <u>Id.</u>  *The same day of the accident*, Progressive Insurance solicited <u>in</u> <u>person</u> the victim and then within 24 hours negotiated a settlement of claims in exchange for a $500 settlement releasing her claims.  <u>Id.</u> at 390-91.  But the following week, the victim learned that her leg was actually broken and challenged the release.  <u>Id.</u> at 391.  The Kentucky Supreme Court found that the release entered into with the insurance company less than 24 hours

---

[13] The District Court's Opinion did not mention <u>Coomer</u>, though it was briefed and argued extensively by counsel for CURE and the Providers.

after the accident was valid.  Id.  As a result, the victim had no coverage through Progressive for her injuries.  Id.  This is a perfect example of an abusive solicitation that the New Solicitation Statute condones.

To pass constitutional muster, the state would have to successfully articulate why an insurer abusively vying for the dollars is permissible, but a healthcare provider vying for the same dollar is not.  By the same token, the State could not meet this Central Hudson burden because it is a distinction without a difference. (For instance, the legislature could not constitutionally ban ads for cola with a red label, such as Coke, but permit ads for cola with a blue label, such as Pepsi.)  The bottom line is that there is still nothing about the New Solicitation Statute that directly advances the privacy objective of curbing PIP abuse.  Indeed, the only thing "directly advanced" by the New Solicitation Statute is an economic advantage for the insurance industry.

Unless the insurance industry can show that all truthful, non-misleading solicitation of accident victims by healthcare providers in the first 30 days after an accident are always and by definition abusive, the New Solicitation Statute necessarily fails the final Central Hudson test for the same reason the Prior Solicitation Statute failed. The State cannot meet its burden because the legislature would have to explicitly assert that it would be a violation of the privacy interests

of the citizens of Kentucky to be told about their rights to PIP and their treatment options for their post-accident injuries.

###### b.  **Enforcement of the New Solicitation Statute should be enjoined and declared unconstitutional because the "evidence" submitted in support of the statute does not demonstrate the restriction will alleviate the harms**

###### i.  *The misleading and irrelevant "evidence" offered by the Attorney General*

"A government body seeking to sustain a restriction on commercial speech must demonstrate that the harms it recites are real." Florida Bar v. Went For It, Inc., 515 U.S. 618, 626 (1995).  Further, it must "demonstrate . . . that this restriction will in fact alleviate [the harms] to a material degree . . . .  Without this requirement, a state could with ease restrict commercial speech in the service of other objectives that could not themselves justify a burden on commercial expression." Edenfield v. Fane, 507 U.S. 761, 770 (1993).  In seeking to meet its burden of establishing that the New Solicitation Statute directly advances the asserted interest of preventing PIP fraud, the Attorney General pointed to evidence that supposedly demonstrates that without a statute in place to restrict abusive solicitation, fraudulent PIP claims have increased.

Upon inspection, however, the state's evidence supposedly demonstrating *rising* "suspicious PIP claims" does nothing of the sort. (Opinion, RE 32, Page ID #426). The chart purporting to establish this actually shows that "there was a *5%*

*decrease* in [questionable claim referrals] submitted for KY between 2012 and 2013, and a *7% decrease* between 2013 and 2014." (Exhibit to Attorney General's Response to Motion, RE 25-2, p. 2, emphasis added). This is despite the fact that during this same time period, the enforcement of the Prior Solicitation Statute was enjoined beginning March 2012. (See pp. 9-10, above). For some inexplicable reason, instead of following the convention of being read left to right, the chart cited by the Attorney General reads right to left, giving the impression of a rising trend but in truth it shows a decline in suspicious claims. Had the State actually read the chart that it argued showed "rising claims" (Attorney General's Response to Motion, RE 25, Page ID # 278), it would have recognized that the insurance industry recognized this in its study. The District Court, however, simply ignored the flaws in the evidence, and focused on the notion that "the abuse of PIP benefits is a real harm." (Opinion, RE 32, Page ID #427). There was simply no evidence submitted by the State that the solicitation of accident victims during the first 30 days after an accident causes fraudulent PIP claims. If that were true, the occurrence of fraudulent PIP claims would have risen after the enforcement of the Prior Solicitation Statute was enjoined, not decreased.

Regardless though, as <u>Reed</u> now makes clear, the possibility of a "real harm" cannot justify curtailing First Amendment protections. The District Court made the jump from the existence of the <u>possibility</u> of abuse to the assertion of fact

48

that "thirty days allows time for an individual to take full stock of his or her injuries, research available opinions, and choose the best course of treatment and provider." Id. This is inexplicable in light of the fact that this hypothetical "research" by the recently injured will occur while insurers are telling them only one side of the story. It is, in fact, a license for the insurance industry to engage in abusive tactics itself.

Furthermore, when evaluating the constitutionality of a content-based restriction on commercial speech, Reed teaches that it doesn't much matter what justifications are put forth by the state, because the threat to the First Amendment right to free speech trumps any such rationale:

> Innocent motives do not eliminate the danger of censorship presented by a facially content-based statute, as future government officials may one day wield such statutes to suppress disfavored speech. That is why the First Amendment expressly targets the operation of the laws—i.e., the "abridg[ement] of speech"—rather than merely the motives of those who enacted them. U.S. Const., Amdt. 1. "'The vice of content-based legislation ... is not that it is always used for invidious, thought-control purposes, but that it lends itself to use for those purposes.' " Hill, supra, at 743, 120 S.Ct. 2480 (SCALIA, J., dissenting).

> For instance, in NAACP v. Button, 371 U.S. 415, 83 S.Ct. 328, 9 L.Ed.2d 405 (1963), the Court encountered a State's attempt to use a statute prohibiting " 'improper solicitation'" by attorneys to outlaw litigation-related speech of the National Association for the Advancement of Colored People. Id., at 438, 83 S.Ct. 328. Although Button predated our more recent formulations of strict scrutiny, the Court rightly rejected the State's claim that its interest in the "regulation of professional

conduct" rendered the statute consistent with the First Amendment, observing that "it is no answer ... to say ... that the purpose of these regulations was merely to insure high professional standards and not to curtail free expression." Id., at 438–439, 83 S.Ct. 328. Likewise, one could easily imagine a Sign Code compliance manager who disliked the Church's substantive teachings deploying the Sign Code to make it more difficult for the Church to inform the public of the location of its services. Accordingly, we have repeatedly "rejected the argument that 'discriminatory ... treatment is suspect under the First Amendment only when the legislature intends to suppress certain ideas.'" Discovery Network, 507 U.S., at 429, 113 S.Ct. 1505. We do so again today.

Reed at 2229. Accordingly, the "evidence" relied upon by the District Court to make the link between fraud and recent accident victims being solicited by medical providers as a justification for the statute was untenable both in principle and in practice.

The only thing the legislature sought to accomplish through the New Solicitation Statute was the same goal as the Prior Solicitation Statute, which, as Judge Simpson noted, failed to recognize that insurance companies *are just as capable of fraudulent actions as medical providers.* "State Farm has failed to explain why the State's interest … cannot be equally protected by the less-burdensome alternative of a statute which prohibits solicitation only by those professions or license holders that have been shown to actually engage in abusive solicitation." (Opinion, RE 3-3, Page ID #48). The same problem applies with

50

respect to the New Solicitation Statute and negates any justification based on precluding abusive solicitations by health care providers.

### ii. *The improper emphasis on irrelevant fraudulent tactics by some medical providers*

The State also attempts to justify its legislation by disparaging the Providers (see Opinion, RE 32, Page ID #423-426).  This is a red herring that has nothing to do with whether the statute is constitutional.  The speech at issue *is by definition NOT the kind of fraudulent speech that the New Solicitation Statute ostensibly intended to curtail*.  Offensive speech is entitled to just as much protection as any other kind of speech, and just like any other kind of speech, so long as it is not misleading and where obscenity is not involved, the Supreme Court "has consistently held that the fact that protected speech may be offensive to some does not justify its suppression," Carey v. Population Servs., Int'l, 431 U.S. 678, 701 (1977), and has "specifically declined to recognize a distinction between commercial and noncommercial speech that would render this interest a sufficient justification for a prohibition of commercial speech." Bolger v. Youngs Drug Products Corp., 463 U.S. 60, 71-72 (1983).  The constitutional issue before the District Court was not whether PIP benefits were *capable* of exploitation by medical providers whose business pitches are found odious by some recipients. The issue was whether the statute illegally barred the constitutionally protected,

non-fraudulent speech of law-abiding medical providers in the name of fighting fraud *as a cover for providing economic benefits to the insurance industry*.

### c.    The District Court erred by failing to recognize the full scope of the ban and its effect on CURE

CURE's mission is to educate the public about their PIP rights, with the intent that the public will exercise that right to the benefit of CURE's member medical providers.  It is self-evident that there can be nothing "fraudulent" about an organization that simply seeks to inform the public about their rights via targeted direct mail. Yet the New Solicitation Statute silences CURE, which perfectly demonstrates that the statute is more extensive than necessary to serve its interests.

If the State really wanted to stop abusive or fraudulent solicitations immediately after automobile accidents in a content or speaker-neutral way, it could seek to ban abusive or fraudulent solicitations by anyone and everyone following an accident.  Or it could ban all solicitations without regard to whether they were fraudulent or abusive, by everyone, *including insurers,* for 30 days.  Or it could seek to create contract nullifying provisions that would protect citizens against the effect of abusive or fraudulent solicitations by anyone.  Or it could create a standard for what constitutes fraud or abuse in the context of post-accident commercial speech and ban only speech that is fraudulent or abusive.  But what it cannot do is enforce a law that both permits insurers to solicit profitable releases of

PIP claims within 30 days of an automobile accident and silence any opposing speech.

## VII.   CONCLUSION

For the reasons set forth above, the New Solicitation Statute violates the First and Fourteenth Amendments to the United States Constitution as well as the Kentucky Constitution.   As a result, its enforcement should be enjoined and the District Court's decision denying the Motion for Preliminary Injunction reversed.

Respectfully submitted,

/s/John D. Cox
John D. Cox
Petersen S. Thomas
**LYNCH, COX, GILMAN & GOODMAN, P.S.C.**
500 West Jefferson Street, Ste. 2100
Louisville, Kentucky 40202
Phone: (502) 589-4215
Facsimile: (502) 589-4994
jcox@lynchcox.com
ptomas@lynchcox.com
*Counsel for Appellants, Chiropractors United for Research and Education, LLC, Commerce Chiropractic and Rehab, PSC, Louisville Sports and Injury Chiropractic & Rehab Center, Robert Kleinfeld, David Seastedt, E-Town Injury Center, Inc., David Romano*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 20th day of November, 2015, I electronically filed the foregoing document with the clerk of the court by using the Court's CM/ECF system which will send notice of electronic filing to the following registered users:

M. Keith Poynter
Board Counsel
Kentucky Board of Chiropractic Examiners
450 S. 3rd Street
Louisville, KY 40202
keith@slftrial.com

Matt James
Assistant Attorney General
Office of Attorney General
700 Capital Ave., Ste. 118
Frankfort, KY 40601
Matt.james@ky.gov

/s/ John D. Cox
John D. Cox

54

## <u>CERTIFICATE OF COMPLIANCE</u>

I hereby certify, pursuant to F.R.A.P 32(a)(7)(B) and (c) that this brief complies with the volume limitation contained in F.R.A.P 32(a)(7)(b)(i) and that the proof brief of Appellants contains 12,271 words as counted by Microsoft Word which word processing program has been relied upon by counsel in making the afore stated word calculation and the certificate.

<em>/s/ John D. Cox</em>                   <br>John D. Cox