UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT
CASE NO. 15-6103

CHIROPRACTORS UNITED FOR RESEARCH
AND EDUCATION, LLC, et al.                                    APPELLANTS

v.

JACK CONWAY, et al.                                                APPELLEES

---

Appeal from the United States District Court
Western District of Kentucky at Louisville
Civil Action No. 3:15-CV-556-GSN

---

**REPLY BRIEF OF APPELLANTS**

---

Respectfully submitted,


*/s/ John D. Cox*
John D. Cox
Petersen S. Thomas
**LYNCH, COX, GILMAN & GOODMAN, PSC**
500 West Jefferson Street, Ste. 2100
Louisville, Kentucky 40202
Phone: (502) 589-4215
Facsimile: (502) 589-4994
jcox@lynchcox.com
pthomas@lynchcox.com
***Counsel for Appellants, Chiropractors United for
Research and Education, LLC, Commerce
Chiropractic and Rehab, PSC, Louisville Sports
and Injury Chiropractic & Rehab Center, Robert
Kleinfeld, David Seastedt, E-Town Injury Center,
Inc., David Romano***

# **<u>TABLE OF CONTENTS</u>**

<u>Page</u>

I.  INTRODUCTION ....................................................................................1

II.  ARGUMENT...........................................................................................3

    A.  Where Restrictions on Commercial Speech are Content and Speaker Based, Sorrell and Reed Require a Strict Scrutiny Analysis. ...............3

        i.  Commercial speech restrictions and content or message based restrictions are not mutually exclusive categories .....................7

        ii.  "Intermediate" scrutiny is not the same thing as "heightened" scrutiny. .......................................................................8

        iii.  <u>State Farm</u> was decided before <u>Reed</u>.......................................12

        iv.  The Prior and New Solicitation statutes are significantly different ................................................................................15

        v.  The Commonwealth's reliance on the 30 day delay rather than the outright ban of speech is unavailing ...................................16

        vi.  If "commercial speech" must do nothing but propose a transaction, then the speech at issue here is not commercial speech and strict scrutiny applies...............................................17

        vii.  The Eleventh Circuit agrees with CURE .................................18

        viii.  The Sixth Circuit reserved exactly this issue...........................20

        ix.  The decisions addressing solicitation restrictions cited by the Commonwealth are distinguishable ..........................................21

    B.  The New Solicitation Statute Fails the Strict Scrutiny Test.....................22

        i.  Underinclusiveness .................................................................23

       ii.     Overinclusiveness ....................................................................24

   C.    The New Solicitation Statute Cannot be Upheld Even Under the Intermediate Level of Scrutiny Set Forth in <u>Central Hudson</u>. ............25

III.   CONCLUSION..............................................................................27

CERTIFICATE OF COMPLIANCE.......................................................30

# TABLE OF AUTHORITIES

<u>Case</u> <u>Page</u>

*1-800-411-Pain Referral Service, LLC v. Otto*,
744 F.3d 1045 (8th Cir. 2014) ...............................................................14

*Bellsouth Telecomm., Inc. v. Farris*,
542 F.3d 499 (6th Cir. 2008) ............................................................2, 20

*Board of Trustees, State Univ. of N.Y. v. Fox*,
492 U.S. 469 (1989).................................................................................25

*Bolger v. Youngs Drug Prods. Corp.*,
463 U.S. 60 (1983)...................................................................................26

*Boos v. Barry*,
485 U.S. 321 (1988).................................................................................22

*Capobianco v. Summers*,
377 F.3d 559 (6th Cir. 2004) ............................................................5, 21

*Carey v. Brown*,
447 U.S. 455 (1980).................................................................................13

*Central Hudson Gas & Electric Corp. v. Public Service Commission of New York*,
447 U.S. 557 (1980).........................................................................*passim*

*City of Cincinnati v. Discovery Network, Inc.*,
507 U.S. 410 (1993).................................................................................10

*Cohen v. California*,
403 U.S. 15 (1971)...................................................................................18

*Coomer v. Phelps*,
172 S.W.3d 389 (Ky. 2005) ....................................................................23

*Dana's R.R. Supply v. Attorney General, Florida*,
807 F.3d 1235 (11th Cir. 2015) ..........................................11, 18, 19, 20

*Florida Bar v. Went for It, Inc.*,
515 U.S. 618 (1995)................................................................5, 11, 18, 19

*Hill v. Colorado*,
120 S.Ct. 2480......................................................................................10

*In re Tam*,
2015 WL 9287035, at *7 (Fed. Cir. Dec. 22, 2015)............................9, 11

*McKinley v. Abbott*,
643 F.3d 403 (5th Cir. 2011) ................................................................21

*NAACP v. Button*,
371 U.S. 415 (1963)..............................................................................10

*Ohralik v. Ohio State Bar Ass'n.*,
436 U.S. 447 (1978)................................................................................5

*Pittsburgh Press Co. v. Human Relations Comm'n*,
413 U.S. 376 (1973)..............................................................................17

*Police Dep't of Chi. v. Mosley*,
408 U.S. 92 (1972)............................................................................8, 13

*Reed v. Town of Gilbert*,
135 S.Ct. 2218 (2015)....................................................................*passim*

*Silverman v. Summers*,
28 Fed.App'x. 370 (6th Cir. 2001) .........................................................5

*Sorrell v. IMS Health, Inc.*,
131 S.Ct. 2653 (2011)....................................................................*passim*

*State Farm Mut. Auto. Ins. Co. v. Conway*,
2014 WL 2618579 (W.D. Ky. June 12, 2014)...........................4, 5, 12, 13

*United States v. Playboy Entm't Grp., Inc.*,
529 U.S. 803 (2000)..............................................................................17

*United States v. Stevens*,
559 U.S. 460 (2010)................................................................22

*W. Va. State Bd. of Educ. v. Barnette,*
319 U.S. 624 (1943)................................................................11

*Va. State Bd. of Pharmacy v. Va. Citizens Consumer Council,*
425 U.S. 748 (1976)................................................................17

*Walraven v. N.C. Bd. Of Chiropractic Exam'rs,*
273 F. App'x 220 (4th Cir. 2008) ........................................21

*Ward v. Rock Against Racism,*
491 U.S. 781 (1989)................................................................16

*Widmar v. Vincent*,
454 U.S. 263 (1981)................................................................23

*Zauderer v. Office of Disciplinary Counsel of Supreme Court of Ohio*,
471 U.S. 626 (1985)................................................................25

## STATUTES AND RULES

Statute                                                                Page

KRS 367.4081 ...................................................................1, 27
KRS 367.4082 ...............................................................1, 16, 27
KRS 367.4083 ...................................................................1, 27
KRS 367.409 ..................................................................4, 5, 15
Ky.Rev.Stat. Ann. § 136.616 (2005). ......................................20

# I.    <u>INTRODUCTION</u>

This Appeal concerns the constitutionality of  KRS 367.4081-4083 ("**The New Solicitation Statute**") in the context of a Motion for Preliminary Injunction brought by Plaintiffs/Appellants Chiropractors United for Research and Education, LLC ("**CURE**") and a group of Chiropractors and their practices ("the **Providers**"). Specifically, CURE and the Providers challenge the District Court's application of an "intermediate scrutiny" analysis of the New Solicitation Statute's content and speaker based restrictions on solicitations of recent automobile accident victims.

CURE and the Providers claim that two recent Supreme Court cases, <u>Sorrell v. IMS Health, Inc.</u>, ___ U.S. ___, 131 S. Ct. 2653 (2011) and <u>Reed v. Town of Gilbert, Ariz.</u>, __ U.S. ___, 135 S. Ct. 2218 (2015) make clear that where a restriction on commercial speech is *based on the content of the speech*, the restriction is to be reviewed under a strict scrutiny analysis.  Further, CURE and the Providers argue that the District Court erred in that the New Solicitation Statute does not meet even the "intermediate" constitutional standard discussed in <u>Central Hudson v. Public Service Commission of New York</u>, 447 U.S. 557 (1980) and incorrectly utilized by the District Court.

In its Response brief, the Commonwealth argues that <u>Sorrell</u> and <u>Reed</u> did not change or clarify commercial speech jurisprudence with respect to the issues

presented here and that the New Solicitation Statute makes no content or speaker based restrictions on speech. As will be shown below, the Commonwealth's position is fatally flawed: its application of the law misconstrues <u>Sorrell</u> and <u>Reed</u>, and its argument depends entirely upon an incorrect presentation of the scope of the New Solicitation Statute. The statute in question is a textbook example of a content and speaker based restriction on commercial speech and as such, it is subject to a strict constitutional analysis, which the District Court failed to apply and which compels a finding of unconstitutionality.

The Court here has the opportunity to address what it saved for "another day" in <u>Bellsouth Telecomm., Inc. v. Farris</u>, 542 F.3d 499, 504-6 (6th Cir. 2008) and confirm that content and speaker based restrictions on commercial speech are to be analyzed under a standard of strict scrutiny, such that the Commonwealth of Kentucky cannot enact laws that muzzle certain speech of chiropractors in order to provide a tactical, commercial, and ideological advantage to insurance companies. In the arguments that follow, this Reply will discuss the recent evolution of commercial speech jurisprudence and demonstrate that, contrary to the Commonwealth's claims, speaker and content based restrictions on commercial speech are to be reviewed under a strict scrutiny analysis. The Reply will then demonstrate that, also contrary to the position taken by the Commonwealth, the New Solicitation Statute is indeed a content based restriction on commercial

speech as that concept is used in the relevant case law. This Reply will then apply the proper strict scrutiny analysis to the New Solicitation Statute, demonstrating that it fails to meet constitutional muster. Finally, this Reply will address the Commonwealth's assertion that the statute in question satisfies Central Hudson and show that it does not.

## II. ARGUMENT

### A. Where Restrictions on Commercial Speech are Content and Speaker Based, Sorrell and Reed Require a Strict Scrutiny Analysis.

The Commonwealth's Response recognizes that the New Solicitation Statute regulates commercial speech but claims that the regulation is not content based. (RE 17 p. 10, 21). This is the linchpin of the Commonwealth's entire argument to uphold the Court's application of intermediate scrutiny under Central Hudson rather than strict scrutiny as set forth in Sorrell and Reed. This argument, found in Section II.C.3, of the Response (RE 17, p. 21), consists of just one paragraph. A review of that one paragraph reveals that the Commonwealth entirely misconstrues the meaning of "content based" in the context of commercial speech.

The crucial paragraph begins by acknowledging that the speech in question is commercial speech.[1] The paragraph then quotes Judge Simpson's opinion in

---

[1] This is not disputed in the general sense that there is a commercial aspect to the speech at issue. That recognition does not constitute an admission that the New Solicitation Statute burdens only commercial speech, as not all "solicitations in

3

State Farm Mut. Auto. Ins. Co. v. Conway, No. 3:13-CV-00229-CRS, 2014 WL 2618579 (W.D. Ky. June 12, 2014) (State Farm Opinion, RE 1-3, Page ID #27, 51, which held that KRS 367.409(1) ("**The Prior Solicitation Statute**") was unconstitutional, for the observation that in that action, as here, it was argued that the statute was content based. The Response observes that in his opinion, Judge Simpson contrasted laws where the government adopted language regulating speech "because of disagreement with the message it conveys," with laws that the Supreme Court characterized as doing "no more than propose a commercial transaction." (RE 17 at p. 22). In other words, the Response focuses on the supposed difference between laws aimed at silencing a viewpoint and laws concerning the regulation of proposed business transactions. The Response then simply asserts that the District Court adequately distinguished "between content based restrictions and general restrictions on commercial speech" and that accordingly, CURE's "interpretation of Sorrell and Reed do nothing to alter the analysis." (RE 17 at p. 22).

That is the sum total of the Commonwealth's basis for claiming that the New Solicitation Statute is not content based. In essence, the Response attempts to cram the speech proscribed by the New Solicitation Statute — which includes

anticipation of financial gain" are calls for someone to buy a product or service. A case in point being the CURE letter (RE 3-8, 3-9, 3-10, Page ID#s 163, 172, 181), which informs accident victims of their rights under Kentucky law and urges them to contact their attorney, chiropractor or other healthcare provider.

educational as well as business elements — into a box labeled "commercial speech," and then argue that if commercial speech is defined as speech used "purely" to propose a commercial transaction, then the New Solicitation Statute cannot be content based because it regulates commercial speech.

The Response posits that by definition, the New Solicitation Statute is not content based and is not subject to strict scrutiny because it proposes a business transaction, which is, according to definitions cited by the Commonwealth, purely commercial in nature. The Response simply references Judge Simpson's reasoning[2] finding unconstitutional the legislature's previous attempt to legislate a competitive advantage for insures and implies that therefore, intermediate scrutiny should apply and the opposite result obtained here.[3]  At no point does the Response explain how a statute that bans speech:

---

[2] Relying upon Ohralik v. Ohio State Bar Ass'n., 436 U.S. 447 (1978), Florida Bar v. Went for It, Inc., 515 U.S. 618 (1995), Silverman v. Summers, 28 Fed.Appx. 370 (6th Cir. 2001), and Capobianco v. Summers, 377 F.3d 559 (6th Cir. 2004), Judge Simpson found that "[g]iven the under and over-inclusiveness of the statute, the Court is unable to conclude that the statute achieves a reasonable fit between its ends and means.    Accordingly, the Court holds that KRS 367.409(1) is unconstitutional."  (State Farm Opinion, RE 1-3, Page ID #49).

[3] It cannot be overemphasized that Judge Simpson's prior decision applying Central Hudson came before the Supreme Court's clarification in Reed, and that the Prior Solicitation Statute was arguably content neutral as it applied to all communications with recent accident victims, not just communications regarding PIP.  KRS 367.409(1).

- by an educational group such as CURE,
- *in favor of PIP benefits*,
- if "in anticipation of financial gain," or
- "for the purpose of solicitation;"

but permits the speech:

- by insurers,
- *opposed to PIP benefits,*
- also "in anticipation of financial gain," or
- "for the purpose of solicitation;"

is not a content based restriction. Of course it is content based. It silences pro-PIP speech and permits anti-PIP speech.

The Commonwealth's position is simply the conclusory assumption that "commercial speech" is by definition "purely" economic in nature and that this somehow takes a statute that restricts solicitations out of the considerations of case law regarding "content based" restrictions on speech. The Commonwealth literally claims that <u>Reed</u> and <u>Sorrell</u> "do nothing to alter [Judge Simpson's prior] analysis." (RE 17 at p. 22). Thus, the Commonwealth necessarily takes the position that all restrictions on commercial speech, including those that are content based, are to be reviewed under <u>Central Hudson</u>.

As shown below, there are factual, legal, and logical errors with this position.

### i.   <u>Commercial speech restrictions and content or message based restrictions are not mutually exclusive categories.</u>

<u>Sorrell</u> held that "heightened" scrutiny applies to commercial speech restrictions that are based on the message being curtailed. "The First Amendment requires heightened scrutiny whenever the government creates 'a regulation of speech because of disagreement with the message it conveys.' … **Commercial speech is no exception.**" <u>Sorrell v. IMS Health Inc.</u>, 131 S. Ct. 2653, 2664 (2011) (internal citation omitted, emphasis added). This is fatal to the Commonwealth's position.

If "heightened" scrutiny applies to *restrictions on commercial speech that are message or content based*, then the idea that all commercial speech is subject to "intermediate" scrutiny is untenable. Obviously, some restrictions on commercial speech are — like the restriction in <u>Sorrell</u> — message based. In other words, the New Solicitation Statute can be both a regulation of commercial speech *and* a message based restriction on commercial speech, thereby taking it out of the intermediate scrutiny test set forth in <u>Central Hudson</u> and into the "heightened" scrutiny test described in <u>Sorrell</u>. The question of course, is what is heightened scrutiny? As argued in Appellants' Brief, the answer is found in <u>Reed</u>: for all practical purposes, where a statute burdens any speech, including commercial speech, based on the message conveyed or who is speaking, it must survive a strict constitutional analysis.

7

### ii.    **"Intermediate" scrutiny is not the same thing as "heightened" scrutiny.**

The Commonwealth's position also claims that intermediate scrutiny (i.e. the Central Hudson test) is the same thing as heightened scrutiny because Sorrell and Reed "add nothing" to the analysis. This reading of Sorrell and Reed renders the entire concept of "heightened" scrutiny absurd. Why would there be a need to raise the concept of "heightened" scrutiny if the analysis ultimately ends up at Central Hudson anyway?

As noted in Appellants' Brief, courts prior to Reed struggled with the definition of "heightened" scrutiny and avoided the issue by applying the lesser level set forth in Central Hudson, thereby skirting the problem when the statutes failed the Central Hudson test. Accordingly, the Commonwealth's reliance on pre-Reed cases that used the Central Hudson test is meaningless. Reed changed the landscape of commercial speech law by citing to Sorrell in the context of holding that "Content-based laws—those that target speech based on its communicative content—are presumptively unconstitutional and may be justified only if the government proves that they are narrowly tailored to serve compelling state interests." Reed v. Town of Gilbert, 135 S.Ct. 2218, 2226 (2015), *citing* Sorrell v. IMS Health, Inc., 131 S.Ct. 2653, 2663-2664 (2011), and Police Dep't of Chi. v. Mosley, 408 U.S. 92, 95, 92 S.Ct. 2286, 33 L.Ed.2d 212 (1972) ("[A]bove all else, the First Amendment means that the government has no power to restrict

8

expression because of its message, its ideas, its subject matter, or its content."). A message is content based even when its reach is defined simply by the subject matter of the covered speech. In re Tam, 2015 WL 9287035, at *7 (Fed. Cir. Dec. 22, 2015), *citing* Reed at 2230.

The Commonwealth's claim that Reed was not discussing "commercial speech" or "heightened scrutiny" borders on disingenuous, considering that Reed held that

> an innocuous justification cannot transform a facially content based law into one that is content neutral.
>
> That is why we have repeatedly considered whether a law is content neutral on its face *before* turning to the law's justification or purpose. *See, e.g.* Sorrell . . . (statute was content based on its face; and there was also evidence of an impermissible legislative motive).

Reed at 2228 (emphasis in original). Thus, Reed specifically cited to a commercial speech case — Sorrell — as an example of how courts should first look to whether a statute is content based and thus subject to strict scrutiny.

Reed teaches that it doesn't much matter what justifications are put forth by the state when evaluating the constitutionality of a facially content-based restriction on commercial speech, because the threat to the First Amendment right to free speech trumps any such rationale:

> Innocent motives do not eliminate the danger of censorship presented by a facially content-based statute, as future government officials may one day wield such statutes to suppress disfavored speech. That is why the First Amendment expressly targets the operation of the

9

laws—i.e., "the abridg[ement] of speech"—rather than merely the motives of those who enacted them. U.S. Const., Amdt. 1. "The vice of content-based legislation ... is not that it is always used for invidious, thought-control purposes, but that it lends itself to use for those purposes." *Hill, supra,* at 743, 120 S.Ct. 2480 (SCALIA, J., dissenting).

<u>Reed</u> at 2229. <u>Reed</u> specifically cited an example of where an apparently

innocuous regulation was used to threaten much more vital interests.

> For instance, in *NAACP v. Button*, 371 U.S. 415, 83 S.Ct. 328, 9 L.Ed.2d 405 (1963), the Court encountered a State's attempt to use a statute prohibiting "'improper solicitation'" by attorneys to outlaw litigation-related speech of the National Association for the Advancement of Colored People. *Id.,* at 438, 83 S.Ct. 328. Although *Button* predated our more recent formulations of strict scrutiny, the Court rightly rejected the State's claim that its interest in the "regulation of professional conduct" rendered the statute consistent with the First Amendment, observing that **"it is no answer ... to say ... that the purpose of these regulations was merely to insure high professional standards and not to curtail free expression."** *Id.,* at 438–439, 83 S.Ct. 328. Likewise, one could easily imagine a Sign Code compliance manager who disliked the Church's substantive teachings deploying the Sign Code to make it more difficult for the Church to inform the public of the location of its services. Accordingly, we have repeatedly "rejected the argument that 'discriminatory ... treatment is suspect under the First Amendment only when the legislature intends to suppress certain ideas.'" *Discovery Network,* 507 U.S., at 429, 113 S.Ct. 1505. We do so again today.

<u>Reed</u> at 2229 (emphasis added).

This interpretation of the severity of the threat posed was recently echoed in

the Eleventh Circuit:

> Viewpoint-based restrictions on speech are among governments' most insidious methods of eliminating unwelcome opinion. As such, they

warrant the greatest level of First Amendment protection. Ceding to any government the power to police expression on the basis of its message poses the most obvious threat to Americans' most fundamental liberties: the freedom of speech and the freedom of conscience. "If there is any fixed star in our constitutional constellation, it is that no official, high or petty, can prescribe what shall be orthodox in politics, nationalism, religion, or other matters of opinion or force citizens to confess by word or act their faith therein." *W. Va. State Bd. of Educ. v. Barnette,* 319 U.S. 624, 642, 63 S.Ct. 1178, 1187, 87 L.Ed. 1628 (1943) (Jackson, J.). The exacting standard of strict scrutiny stands as sentinel against the diminution of that liberty. **Appropriately tailored regulations of commercial speech— such as those imposing limits on lawyers' ability to make in-person solicitations or advertise using direct mailings after a personal injury has occurred,** *see Fla. Bar v. Went For It, Inc.,* **515 U.S. 618, 115 S.Ct. 2371, 132 L.Ed.2d 541 (1995)—will necessarily target specific content and speakers.** *See Wollschlaeger,* **797 F.3d at 894–96. But merely wrapping a law in the cloak of "commercial speech" does not immunize it from the highest form of scrutiny due government attempts to discriminate on the basis of viewpoint.**

Dana's R.R. Supply v. Attorney General, Florida, 807 F.3d 1235, 1248 (11th Cir. 2015) (emphasis added).

Sorrell acknowledged that "[a] consumer's concern for the free flow of commercial speech often may be far keener than his concern for urgent political dialogue." Sorrell, 131 S. Ct. at 2664 (internal quotation marks omitted). Accordingly, the very crux of the Commonwealth's position — that this Court need not even consider Reed and Sorrell because the intermediate scrutiny test in Central Hudson is adequate to protect against constitutional threats — is simply wrong. Sorrell and Reed (and cases interpreting those precedents, *e.g.* In re Tam

and Dana's R.R. Supply) explicitly deal with a state's improper attempts to curtail the content of a particular message by cloaking it in a "commercial speech" regulation and found those attempts unconstitutional.

The fact that Reed refers to Sorrell's holding that content based commercial speech restrictions are subject to heightened scrutiny without using the term "commercial speech" does not change the fact that Sorrell and Reed require that content based restrictions on speech — whether commercial or not — are to be reviewed under strict scrutiny. Reed explicitly states that the question of whether it is a content based restriction comes first. Reed at 2228.

### iii.    State Farm was decided before Reed.

At the time Judge Simpson ruled on the Prior Solicitation Statute, the Supreme Court had not yet explained the practical effect of its holding of Sorrell. In Sorrell, the Supreme Court determined that the statute at issue addressed commercial speech[4] (Id. at 2263), and held that the law was "designed to impose a specific, content-based burden on protected expression." Id. at 2264. As a result, the Court concluded that "it follows that *heightened judicial scrutiny* is warranted."

---

[4] It is worth noting that in Sorrell, the statute in question was found by the Supreme Court to "impose[] more than an incidental burden on protected expression" despite the State's argument that "heightened judicial scrutiny is unwarranted because its law is a *mere* commercial regulation." Sorrell at 2664-65. In other words, Sorrell rejected exactly the argument posed by the Commonwealth.

Id. at 2657 (emphasis added).[5]  Four years later, in Reed, the Supreme Court emphasized that government regulation of any speech that is content or speaker-based is subject to strict constitutional scrutiny:

> Government regulation of speech is content based if a law applies to particular speech because of the topic discussed or the idea or message expressed. ***E.g., Sorrell v. IMS Health, Inc**.,* 564 U.S. ——, —— – ——, 131 S.Ct. 2653, 2663–2664, 180 L.Ed.2d 544 (2011); *Carey v. Brown,* 447 U.S. 455, 462, 100 S.Ct. 2286, 65 L.Ed.2d 263 (1980); *Mosley, supra,* at 95, 92 S.Ct. 2286. This commonsense meaning of the phrase content based requires a court to consider whether a regulation of speech on its face draws distinctions based on the message a speaker conveys. *Sorrell, supra,* at ——, 131 S.Ct. at 2664. Some facial distinctions based on a message are obvious, defining regulated speech by particular subject matter, and others are more subtle, defining regulated speech by its function or purpose. **Both are distinctions drawn based on the message a speaker conveys, and, therefore, are subject to strict scrutiny.**

Id. (emphasis added).  The undersigned submits that one cannot reasonably read this language without accepting that a statute restricting speech that is for the purpose of soliciting medical treatment to be paid with PIP benefits is based specifically on the content of that message.

Had Reed's clarification as to the meaning of heightened scrutiny been on the books when State Farm was decided, Judge Simpson might have found that the much broader Prior Solicitation Statute was, in fact, a content based burden on

---

[5] Because the Supreme Court held that the regulations at issue in Sorrell did not meet intermediate level scrutiny under Central Hudson, the Court neither defined nor applied "heightened judicial scrutiny." Accordingly, until Reed, supra, a plausible argument could be made that "heightened scrutiny" was not the same as "strict scrutiny."  After Reed, however, that is no longer a viable strategy.

commercial speech. But speculation aside, at a minimum, the Commonwealth's claim that <u>Reed</u> does not compel a strict scrutiny analysis where a regulation of speech defines the regulated speech by its function or purpose, is incorrect. Under <u>Sorrell</u>, "heightened" scrutiny applies to commercial speech that is restricted based on content, and under <u>Reed</u>, strict scrutiny applies where a statute is content based. The New Solicitation Statute does exactly that.

CURE and the providers noted in their principal brief that after <u>Sorrell</u> but prior to <u>Reed</u>, courts would at times default to the intermediate scrutiny standard set forth in <u>Central Hudson</u> when reviewing content based restrictions on commercial speech, essentially concluding that since intermediate scrutiny must be lower than heightened scrutiny, the failure of a regulation to meet the <u>Central Hudson</u> standard would necessarily make it unconstitutional under "heightened" scrutiny.[6] CURE cited <u>1-800-411-Pain Referral Service, LLC v. Otto</u>, 744 F.3d 1045, 1055 (8th Cir. 2014), as an example.

> If a commercial speech restriction is content- or speaker-based, then it is subject to "heightened scrutiny." *Sorrell,* 131 S.Ct. at 2664. *Sorrell,* however, did not define what "heightened scrutiny" means. Instead, after concluding that the restrictions in the case were both content- and speaker-based, the Court proceeded to analyze them under the *Central Hudson* factors, noting the outcome would have been "the same whether a special commercial speech inquiry or a stricter form of judicial scrutiny is applied. *Sorrell,"* 131 S.Ct. at 2667.

---

[6] This is what Judge Simpson did in analyzing the Prior Solicitation Statute.

14

Id.  The Commonwealth took issue with this theory, claiming that <u>Otto</u> compels the use of intermediate scrutiny in all commercial speech cases. <u>Reed</u> holds otherwise. And the speech at issue in <u>Otto</u> was untruthful and misleading thereby eliminating the protection offered by the First Amendment.

### iv.   The Prior and New Solicitation statutes are significantly different.

Judge Simpson's Opinion finding that the Prior Solicitation Statute failed <u>Central Hudson</u> concerned a significantly different statute. Unlike the New Solicitation Statute, the Prior Solicitation Statute provided that for the first thirty days following a motor vehicle accident, a person:

> shall not directly solicit or knowingly permit another person to directly solicit an individual, or a relative of an individual, involved in a motor vehicle accident for the provision of any service related to a motor vehicle accident.

KRS 367.409. The Prior Solicitation Statute exempted from this blanket restriction on all communications with accident victims: those by insurers or their agents, and emergency personnel dispatched to the scene.[7]  While the two statutes obviously

---

[7] It further provided that (i) a person who knowingly violated the restriction on solicitation shall be subject to a one thousand dollar ($1,000) fine; (ii) a person licensed or certified by a regulating authority in Kentucky who violated the statute "may be sanctioned" by the licensing or regulating authority; (iii) any charges owed by or on behalf of an individual involved in a motor vehicle accident for services rendered by or on or behalf of a person who violated the statute "shall be void;" and (iv) any moneys paid by or on behalf of a victim of a motor vehicle accident for services rendered by or on behalf of a person who violated this statute "shall be forfeited and returned to the payor."  <u>Id.</u>

have the identical goal of giving the insurance industry a head start in efforts to avoid paying PIP benefits, they are significantly different in their approach. Presumably, the irony of the Commonwealth citing an opinion that held unconstitutional a statute with identical ends but different means is not lost on the Court.

The New Solicitation Statute prevents only certain speakers (medical providers) from providing certain information to recent accident victims regarding their rights to PIP because that solicitation is a communication *in anticipation* of PIP charges for healthcare services. In fact, Section 2(b) of KRS 367.4082 of the New Solicitation Statute provides that a healthcare provider shall not:

> provide monetary compensation or other consideration to any individual for the purpose of inducing, enticing or directing the provision of reparation benefits for a person involved in a motor vehicle accident …"

Thus, CURE, a group funded by its members, who are healthcare providers, is also prohibited from advising recent accident victims.

### v.     The Commonwealth's reliance on the 30 day delay rather than the outright ban of speech is unavailing

"The First Amendment requires heightened scrutiny whenever the government creates 'a regulation of speech because of disagreement with the message it conveys." <u>Sorrell</u>, 131 S.Ct. at 2664 (quoting <u>Ward v. Rock Against Racism</u>, 491 U.S. 781, 791, 109 S.Ct. 2746, 105 L.Ed.2d 661 (1989)). This is true

16

whether the regulation bans or merely burdens speech. "[H]eightened judicial scrutiny is warranted" when an act "is designed to impose a specific, content-based burden on protected expression." Id.; *see also* Rosenberger, 515 U.S. at 828 ("[T]he government offends the First Amendment when it imposes financial burdens on certain speakers based on the content of their expression."). "The distinction between laws burdening and laws banning speech is but a matter of degree. The Government's content-based **burdens** must satisfy the same rigorous scrutiny as its content-based **bans**." United States v. Playboy Entm't Grp., Inc., 529 U.S. 803, 812, 120 S.Ct. 1878, 146 L.Ed.2d 865 (2000). "Lawmakers may no more silence unwanted speech by burdening its utterance than by censoring its content." Sorrell, 131 S.Ct. at 2664. Accordingly, the thirty day distinction of a ban on pro-PIP speech does not avoid strict scrutiny.

### vi. If "commercial speech" must do nothing but propose a transaction, then the speech at issue here is not commercial speech and strict scrutiny applies.

Commercial speech is a narrow category of necessarily expressive communication that is "related solely to the economic interests of the speaker and its audience," Central Hudson, 447 U.S. at 561, 100 S.Ct. at 2349, or that "does 'no more than propose a commercial transaction.'" Va. State Bd. of Pharmacy v. Va. Citizens Consumer Council, 425 U.S. 748, 762, 96 S.Ct. 1817, 1825, 48 L.Ed.2d 346 (1976) (quoting Pittsburgh Press Co. v. Human Relations Comm'n, 413 U.S.

376, 385, 93 S.Ct. 2553, 2558, 37 L.Ed.2d 669 (1973)). If, as the Commonwealth implies, commercial speech is only that speech which proposes a transaction, then the speech at issue goes far beyond commerce. CURE is not proposing a transaction, yet it is banned from talking about PIP benefits because its members would benefit if citizens knew their rights. The Commonwealth cannot have it both ways. Regardless, strict scrutiny applies.

### vii. The Eleventh Circuit agrees with CURE.

<u>Dana's R.R. Supply v. Attorney General, Florida</u>, 807 F.3d 1235, (11th Cir. 2015) is directly on point and gets it right on every aspect of the issues. The case concerned a Florida law that on its face touched on economic activity because it "appears to regulate businesses engaged in dual-pricing, applies to '[a] seller or lessor in a sales or lease transaction,' turns on the method of payment used, and defines the offense as occurring "at the time of a sale or lease transaction." <u>Id</u>. at 1247. The Eleventh Circuit recognized that the law had the "flavor of commercial speech" but noted that:

> the law's taste is muddled by less savory notes of plain old-fashioned speech suppression. The statute goes to great length to avoid direct regulation of any actual conduct—that is, it fails to limit at all merchants' discretion to engage in dual-pricing—in favor of limiting speech alone. And the speech it limits contains elements of core political speech. By effectively purging from merchants' vocabularies the doubleplusungood *surcharge* and replacing it with the State's preferred term, *discount,* the constituency most impacted by the no-surcharge law has been deprived of its full rhetorical toolkit. *See Cohen v. California,* 403 U.S. 15, 26, 91 S.Ct. 1780, 1788, 29 L.Ed.2d

18

284 (1971) "([W]e cannot indulge the facile assumption that one can forbid particular words without also running a substantial risk of suppressing ideas in the process. Indeed, governments might soon seize upon the censorship of particular words as a convenient guise for banning the expression of unpopular views.)." In turn, Florida's no-surcharge law deprives the marketplace of ideas of the full range of public sentiment.

Id. at 1247-48.

Dana's recognized that its extraordinary breadth suggested that the no-surcharge law was more than a mere regulation of commercial speech. Id. The Court observed that

[a] law enacted for the sole purpose of forbidding a price difference to be labelled a *surcharge,* while allowing the same to be called a *discount,* does not impose an "incidental burden" on speech. *Sorrell,* 564 U.S. at ——, 131 S.Ct. at 2664–65. On the contrary, imposing a direct and substantial burden on disfavored speech—by silencing it—is the whole point. The no-surcharge law is content based: it applies only to how a merchant may frame the price difference between cash and credit-card payments. *See Reed,* 576 U.S. at ——, 135 S.Ct. at 2227. The no-surcharge law is speaker based: it applies only to those merchants who accept payment by both cash and credit card and engage in dual-pricing. *See Turner Broad. Sys., Inc. v. Fed. Commc'ns Cmm'n,* 512 U.S. 622, 657–58, 114 S.Ct. 2445, 2466–67, 129 L.Ed.2d 497 (1994). And the no-surcharge law is viewpoint based: it denies the expression of one equally accurate account of reality in favor of the State's own. *See R.A.V. v. City of St. Paul,* 505 U.S. 377, 391, 112 S.Ct. 2538, 2547–48, 120 L.Ed.2d 305 (1992).

Id. The Court went on to reject any notion that merely because *some* modicum of economic conduct is implicated therefore a law cannot also unconstitutionally restrict speech, observing that

[t]he First Amendment is not so easily circumvented. And, in any event, the no-surcharge law does not sweep up only speech that is incidental and necessary to the enforcement of another important state interest; speech is the only behavior being targeted. *Cf. Giboney v. Empire Storage & Ice Co.,* 336 U.S. 490, 502, 69 S.Ct. 684, 690, 93 L.Ed. 834 (1949) ('But [speech] used as an essential and inseparable part of a grave offense against an important public law cannot immunize that unlawful conduct from state control').

Id. By the same token, the First Amendment should not be so easily circumvented here.

### viii.    The Sixth Circuit reserved exactly this issue.

As noted in Dana's, the Sixth Circuit faced a similar law that implicate[d] commercial *and* political speech in BellSouth Telecomm., Inc. v. Farris, 542 F.3d 499 (6th Cir.2008).  Kentucky had passed a law requiring telecom providers to collect a tax from their customers while forbidding the providers from directly collecting the tax and from communicating to consumers any additional charges as a "tax."  *See* Id. at 501 (citing Ky.Rev.Stat. Ann. § 136.616 (2005)). The majority opinion acknowledged having "difficulty in placing a label on the law" but observed that "what is going on here is more than just a debate about how best to sell toothpaste." Id. at 504-6. Similarly, there is more going on in the New Solicitation Statute than simply protecting the good citizens of Kentucky from evil medical providers.  Ultimately, the court in BellSouth v. Farris concluded that it could "save the issue for another day" because the challenged law "does not survive even the less-stringent intermediate level of scrutiny applicable to

20

commercial speech." Id. The "another day" alluded to in BellSouth v. Farris is now upon us and Reed and Sorrell provide the answer.

### ix. The decisions addressing solicitation restrictions cited by the Commonwealth are distinguishable.

At page 31 of its Response, after discussing three cases it claims bolsters its position, the Commonwealth asserts that "CURE does not, and cannot, substantively distinguish these cases." As a threshold matter, it must be recognized that the Commonwealth's assertion is somewhat silly given that each of these three cases upon which the Commonwealth relies[8] was decided before Reed or Sorrell. The cases are irrelevant because Reed and Sorrell require the application of strict scrutiny upon a determination that the speech is being restricted for its content.

Moreover, in none of these cases cited by the Commonwealth was the statute at issue specifically directed at speech related to PIP benefits.[9] Indeed, not even Judge Simpson's ruling regarding the Prior Solicitation Statute addresses PIP benefits because the Prior Solicitation Statute was profoundly different in that it

---

[8] Capobianco v. Summers, 377 F.3d 559 (6th Cir. 2004); McKinley v. Abbott, 643 F.3d 403 (5th Cir. 2011) (Sorrell was decided June 23, 2011 and McKinley was decided on June 8, 2011); and Walraven v. N.C. Bd. Of Chiropractic Exam'rs, 273 F. App'x 220 (4th Cir. 2008).

[9] In theory, it is conceivable that Walraven v. N.C. Bd. Of Chiropractic Exam'rs, 273 F. App'x 220 (4th Cir. 2008) might have some connection to a PIP-like benefit in North Carolina, but there is nothing about the case itself that suggests that the speech at issue was limited to discussions about PIP-like benefits (as is the case with the New Solicitation Statute) nor was that the basis of the decision.

consisted of a blanket ban that exempted insurers, thus having the same effect as the New Solicitation Statute without specifically identifying the content that was to be silenced.

The one case cited by the Commonwealth (at p. 19 of its Brief) that actually addresses post-Reed jurisprudence, <u>Citizens for Free Speech, LLC v. Cnty. of Alameda</u>, 2015 WL 4365439, contains within the very quote cited by the Commonwealth, the basis for its distinction: "Plaintiffs have not identified any distinct temporal or geographic restrictions on different categories of permitted signs in Section 17.52.520 **based on those signs' content.  Consequently, <u>Reed</u> does not apply here.**" <u>Id.</u> at *13 (emphasis added).  By contrast, the content based restriction here is glaring: anti-PIP speech is permitted and pro-PIP speech is forbidden.

**B.      The New Solicitation Statute Fails the Strict Scrutiny Test.**

Under the correct standard of scrutiny, the New Solicitation Statute can only be upheld if the state proves (a) it has a compelling state interest, and (b) that the statute is narrowly tailored to advance that compelling interest.  <u>Reed</u>, 135 S.Ct. at 2226, *see also* <u>Boos v. Barry</u>, 485 U.S. 321 (1988).  Content-based restrictions are presumptively unconstitutional, and the state has the burden to rebut that presumption.  <u>United States v. Stevens</u>, 559 U.S. 460, 468 (2010).  "In the ordinary

case it is all but dispositive to conclude that a law is content-based and in practice, viewpoint-discriminatory." <u>Sorrell</u> at 2667.

> The courts are charged with reviewing state regulations to determine if a regulation is necessary to serve a compelling state interest and if it has been narrowly written to protect against the evil that the government can control. *Widmar v. Vincen*t, 454 U.S. 263, 102 S. Ct. 269, 70 L. Ed. 2d 440 (1981) provides, '**Where a regulation extends so far as to completely outlaw speech because of the subject matter of its content, there is a strong presumption of its unconstitutionality**.'

<u>Id.</u> at 348 (some citations omitted, emphasis added).

Assuming for the sake of argument that the protection of PIP fraud and protection of accident victims' privacy are compelling governmental interests, the New Solicitation Statute is not narrowly tailored to advance these asserted interests because the New Solicitation Statute is both fatally under- and over-inclusive.

### i.    <u>Underinclusiveness</u>

The <u>Reed</u> decision specifically held that a government regulation is not narrowly tailored "when it leaves appreciable damage to that supposed vital interest unprohibited." <u>Reed</u> at 2232. The failure to include others who may engage in abusive solicitations of accident victims in the first 30 days after an accident, for example insurers, as described in <u>Coomer v. Phelps</u>, 172 S.W.3d 389 (Ky. 2005), causes the statute to fail this step.

### ii.    __Overinclusiveness__

The New Solicitation Statute is also overinclusive and is not narrowly tailored because it prohibits the communications of CURE and other medical providers, without regard to whether their communications have been or can be shown to be abusive.  Even assuming that the Commonwealth has shown that the chiropractic field is filled with charlatans and that the state has the authority to prevent them from treating accident victims and being paid with PIP dollars, it still does not justify banning the speech of CURE, which merely informs the citizen of their rights under the PIP statute.

The bottom line is that fraudulent solicitation by insurers is no less likely or problematic than fraudulent solicitation by medical providers. Yet the New Solicitation Statute permits all solicitation by insurers within 30 days of an accident and prohibits any solicitation by medical providers. The Commonwealth cannot claim that banning speech regarding PIP by medical providers is necessary to combat fraud while at the same time allowing unfettered speech by insurers regarding PIP, even if some chiropractors are "bad guys."  Similarly, the State has offered no reason to believe that the privacy of recent accident victims could be disturbed by medical providers offering treatment, but could not be disturbed by insurers seeking premature releases.

**C.     The New Solicitation Statute Cannot be Upheld Even Under the Intermediate Level of Scrutiny Set Forth in <u>Central Hudson</u>.**

As spelled out in the Principal Brief, the statute is unconstitutional even under <u>Central Hudson's</u> intermediate scrutiny standard.  As the party seeking to uphold the statute, the Commonwealth bears the burden of establishing that the statute satisfies these requirements.  *See*, <u>Board of Trustees, State Univ. of N.Y. v. Fox</u>, 492 U.S. 469, 476 (1989) (citing <u>Zauderer v. Office of Disciplinary Counsel of Supreme Court of Ohio</u>, 471 U.S. 626, 644 (1985)).

The New Solicitation Standard fails the <u>Central Hudson</u> test because it does not directly advance the asserted interest and because it is more extensive than necessary to serve that interest. There is no reason to believe that medical providers can abuse the PIP system, but insurers cannot.  If Kentucky's no fault system provides PIP benefits to its citizens who are victims of motor vehicle accidents where their injuries require less than $10,000 worth of medical treatment, then the *premature* release of legitimate PIP claims is just as abusive as the incurrence of illegitimate medical charges.

The State has failed to demonstrate that its interest in protecting the privacy and tranquility of motor vehicle accident victims cannot be equally well protected by banning only the speech of abusive solicitors which must include abusive insurers and cannot include CURE. There is nothing about CURE's solicitation

that is misleading or false, nor has there been any finding by anyone that CURE engages in PIP abuse.

If the Commonwealth really wanted to stop abusive or fraudulent solicitations immediately after automobile accidents in a content or speaker-neutral way, it could seek to ban abusive or fraudulent solicitations by anyone and everyone following an accident. Or it could ban all solicitations without regard to whether they were fraudulent or abusive, by everyone, *including insurers,* for 30 days. Or it could seek to protect citizens against the effect of abusive or fraudulent solicitations by anyone by making all agreements entered into by an accident victim during the first 30 days voidable. Or it could create a standard for what constitutes fraud or abuse in the context of post-accident commercial speech and ban only speech that is fraudulent or abusive. But what it cannot do is enforce a law that both permits insurers to solicit profitable releases of PIP claims within 30 days of an automobile accident and silence any opposing speech, including speech that merely advises people of their right to this paid treatment <u>before</u> any release and settlement is reached.

The Commonwealth has also failed to show why the insurance industry should be given free rein to engage in abusive or misleading solicitations. Since the party "seeking to uphold a restriction on commercial speech carries the burden of justifying it," <u>Bolger,</u> 463 U.S. 60, 71 n. 20 (1983), the Commonwealth failed to

meet its burden of demonstrating that KRS 367.4081-4083's "ends-means fit" is sufficiently tailored to meet the standard set forth in <u>Central Hudson</u>. To pass constitutional muster, the Commonwealth would have to successfully articulate why an insurer abusively vying for the dollar is permissible, but a healthcare provider vying for the same dollar is not.

Unless the insurance industry can show that <u>all</u> truthful, non-misleading communication to accident victims about the law is <u>always</u> <u>and</u> <u>by</u> <u>definition</u> <u>abusive</u>, the New Solicitation Statute necessarily fails the final <u>Central Hudson</u> test. The legislature would have to explicitly assert that it would be a violation of the privacy interests of the citizens of Kentucky to be told about their rights to PIP and their treatment options for their post-accident injuries. This it cannot do.

### III.    CONCLUSION

CURE and the Providers seek to communicate with victims of automobile accidents as soon as possible after an accident to advise them of the existence of PIP medical coverage and their right to receive certain medical care at no out-of-pocket cost. Nothing about what CURE and the Providers have said or will say to recent automobile accident victims is misleading or untrue. The attempt to prevent them from doing so is unconstitutional, and cloaking the issue in a commercial speech restriction does not immunize the New Solicitation Statute from strict constitutional scrutiny.

27

For the reasons set forth above, the New Solicitation Statute violates the First and Fourteenth Amendments to the United States Constitution as well as the Kentucky Constitution. As a result, its enforcement should be enjoined and the District Court's decision denying the Motion for Preliminary Injunction reversed.

Respectfully submitted,

/s/John D. Cox
John D. Cox
Petersen S. Thomas
**LYNCH, COX, GILMAN & GOODMAN, P.S.C.**
500 West Jefferson Street, Ste. 2100
Louisville, Kentucky 40202
Phone: (502) 589-4215
Facsimile: (502) 589-4994
jcox@lynchcox.com
ptomas@lynchcox.com
*Counsel for Appellants, Chiropractors United for Research and Education, LLC, Commerce Chiropractic and Rehab, PSC, Louisville Sports and Injury Chiropractic & Rehab Center, Robert Kleinfeld, David Seastedt, E-Town Injury Center, Inc., David Romano*

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 29th day of January, 2016, I electronically filed the foregoing document with the clerk of the court by using the Court's CM/ECF system which will send notice of electronic filing to the following registered users:

M. Keith Poynter
Board Counsel
Kentucky Board of Chiropractic Examiners
450 S. 3rd Street
Louisville, KY 40202
keith@slftrial.com

Matt James
Assistant Attorney General
Office of Attorney General
700 Capital Ave., Ste. 118
Frankfort, KY 40601
Matt.james@ky.gov

/s/ John D. Cox
John D. Cox

29

## <u>CERTIFICATE OF COMPLIANCE</u>

I hereby certify, pursuant to F.R.A.P. 32(a)(7)(B) and (c) that this brief complies with the volume limitation contained in F.R.A.P. 32(a)(7)(b)(i) and that the proof brief of Appellants contains 6,941 words as counted by Microsoft Word which word processing program has been relied upon by counsel in making the afore stated word calculation and the certificate.

*/s/ John D. Cox*      
John D. Cox